USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 96-1418 DIGNA SERRANO-CRUZ, HECTOR IRIZARRY, AND THE CONJUGAL SOCIETY COMPRISED BETWEEN THEM, Plaintiffs - Appellants, v. DFI PUERTO RICO, INC., ET AL., Defendants - Appellees. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Juan M. P rez-Gim nez, U.S. District Judge] ___________________ ____________________ Before Torruella, Chief Judge, ___________ Campbell, Senior Circuit Judge, ____________________ and DiClerico,* District Judge. ______________ _____________________ Javier A. Morales-Ramos for appellants. _______________________ Vicente J. Antonetti, with whom Ilsa Y. Figueroa-Ar s and _____________________ ______________________ Goldman Antonetti & C rdova were on brief for appellees. ___________________________ ____________________ March 19, 1997 ____________________  ____________________ * Of the District of New Hampshire, sitting by designation. TORRUELLA, Chief Judge. Plaintiff-appellant Digna TORRUELLA, Chief Judge.  ____________ Serrano-Cruz ("Serrano") formally resigned from her job with defendant-appellee DFI Puerto Rico, Inc. ("DFI") on August 22, 1994. Four months later, she and her husband filed suit under the Age Discrimination in Employment Act of 1967 ("ADEA"), as amended, 29 U.S.C.A. 621-634 (1985 & Supp. 1996), claiming damages resulting from allegedly discriminatory, adverse employment actions resulting in her constructive dismissal. She and her husband now appeal the district court's grant of summary judgment for her employer, DFI. We affirm, finding that Serrano failed to establish a prima facie case under the ADEA. BACKGROUND BACKGROUND In the summary judgment context we relate all material facts in genuine dispute in the light most favorable to the party resisting summary judgment, here Serrano. S nchez v. Alvarado, _______ ________ 101 F.3d 223, 225 n.1 (1st Cir. 1996). Serrano worked for DFI's predecessor firm, Aeroboutiques, from 1984 until it was purchased by DFI in September 1992. Aeroboutiques, and later DFI, owned and operated several stores selling gifts and other consumer merchandise at Luis Mu oz Mar n International Airport in San Juan. At the time of the change in ownership, Serrano served as the "assistant general manager" of Aeroboutiques, and, in that position, assisted the general manager, supervised the operation of the airport stores, oversaw their physical upkeep (e.g., lighting, cleanliness) and their security systems, and performed -2- some accounting functions.1 When DFI took over the stores, Serrano was offered, and accepted, the position of "comptroller."2 As comptroller Serrano continued to perform her previous managerial duties, with regular duties including: maintaining the security system for the airport stores, supervising store employees and arranging employee vacation time, having responsibility for the keys to the stores, and attending security and employee management meetings. In addition, she assumed accounting responsibilities such as preparing quarterly reports and keeping the payroll accounts. The events giving rise to her suit began in February 1994, when the general manager (Manny Lozano) and the president (Luis Bared) of DFI, Serrano's superiors, began reducing her responsibilities. She lost managerial control over the security system for the stores, as well as control over the keys. Serrano's role in personnel selection was also decreased, and she was excluded from meetings she had previously attended.  Through a letter to Serrano dated June 21, 1994, Luis Bared indicated that Serrano was on a 90-day probation period effective that day. The letter cited DFI's dissatisfaction with Serrano's "negligent" handling of certain rent payments for the  ____________________ 1 Prior to being assistant general manager, Serrano had occupied the position of "comptroller" at Aeroboutiques, in which she was responsible for all of the accounting functions of the company as well as for general supervision. When she became assistant general manager, her accounting responsibilities were reduced.  2 The record contains inconsistent references to this position as either "comptroller" or "controller."  -3- airport stores. Bared indicated that during the 90-day period, he and Manny Lozano would be evaluating her performance as comptroller. Serrano denies that she made mistakes in the course of discharging her accounting duties as comptroller.  On July 18, 1994, before the 90-day probation period had ended, Lozano informed Serrano that DFI had decided to transfer her to a newly created position entitled "retail manager." Serrano refused the new position, stating that being fired would be preferable to the new position. In a letter to Serrano dated July 21, 1994, Lozano stated that Serrano would receive the same salary and benefits in the new position as she had received as comptroller, and that she would be given two days of paid leave to reconsider her decision to turn down the position. Lozano's July 21 letter further states that, as retail manager, Serrano "would supervise and be responsible for the retail operation of our San Juan International Airport stores." After taking a month of leave, Serrano formally resigned from DFI on August 22, 1994, and now claims she was forced to resign by DFI's unacceptable job transfer. Serrano was 53 at the time her suit was initiated in December 1994. There is no direct evidence that DFI's actions were taken because of Serrano's age. Appellant alleges a few facts that might suggest discriminatory animus on the basis of her age. These are: that she was replaced by a woman aged 25 with roughly the same qualifications and with less experience; that she was treated differently from younger employees by DFI -4- management by not receiving free lipstick samples and not being thrown a birthday party. The district court granted DFI's summary judgment motion, ruling that Serrano failed to establish constructive dismissal as part of her prima facie case of age discrimination because she did not show that there was a problem with the new position that would compel a reasonable person to resign. Before us on appeal is Serrano's ADEA claim against DFI, her state law claims having been dismissed without prejudice. STANDARD OF REVIEW STANDARD OF REVIEW We review the district court's grant of summary judgment de novo. Mulero-Rodr guez v. Ponte, 98 F.3d 670, 672 __ ____ ________________ _____ (1st Cir. 1996). Summary judgment is properly granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  Under Rule 56, once the moving party has pointed to the absence of adequate evidence supporting its opponent's case, the onus is on the party resisting the motion for summary judgment to respond by presenting facts that show that there is a "genuine issue for trial." LeBlanc v. Great American Ins. Co., 6 F.3d _______ ________________________ 836, 841-42 (1st Cir. 1993) (quoting Anderson v. Liberty Lobby, ________ _______________ Inc., 477 U.S. 242, 256 (1986)). To oppose the motion ____ successfully, the nonmoving party "may not rest upon mere -5- allegations or denials of his pleading." Anderson, 477 U.S. at ________ 256. "The nonmoving party must establish a trial-worthy issue by presenting 'enough competent evidence to enable a finding favorable to the nonmoving party.'" LeBlanc, 6 F.3d at 842 _______ (quoting Anderson, 477 U.S. at 249). ________ DISCUSSION DISCUSSION The ADEA makes it unlawful for an employer to "discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C.A. 623(a)(1) (1985). In a wrongful discharge case under the ADEA, the plaintiff bears the ultimate burden of proving that "he would not have been fired but for his age." Freeman v. Package Mach. Co., 865 F.2d 1331, 1335 (1st Cir. _______ __________________ 1988). Where, as here, there is no direct evidence showing that the employer's actions were motivated by age, the familiar McDonnell Douglas framework governs. See McDonnell Douglas Corp. _________________ ___ _______________________ v. Green, 411 U.S. 792, 802-05 (1973); Greenberg v. Union Camp _____ _________ __________ Corp., 48 F.3d 22, 26-27 (1st Cir. 1995). Under the McDonnell _____ _________ Douglas framework, the employee must initially come forward with _______ sufficient evidence to establish a prima facie case of age _____ _____ discrimination. Here, Serrano needed to establish that: (i) she is over forty years of age; (ii) her job performance was sufficient to meet DFI's legitimate job expectations; (iii) she was constructively discharged; and (iv) DFI sought a replacement with roughly similar skills or qualifications. Greenberg, 48 _________ -6- F.3d at 26. Once the plaintiff has met this modest burden, a presumption of discrimination arises that shifts the onus to the employer to come forward with a legitimate, nondiscriminatory reason for its actions. Id. If the employer does so, the ___ presumption of age discrimination vanishes and the burden shifts back to the plaintiff to show that the employer's justification is pretextual. The burden of persuasion, as opposed to the burden of production, rests with the plaintiff throughout. The district court found that although there may exist a factual dispute between the parties as to whether Serrano met DFI's legitimate job expectations (the second prong of McDonnell _________ Douglas), or indeed as to whether DFI's reasons for reducing _______ Serrano's duties or transferring her job were pretexts for improper age discrimination, Serrano failed to establish a prima facie case because, on undisputed facts, she did not establish constructive dismissal (prong three). On appeal Serrano contends that there is a triable issue as to constructive dismissal, making summary judgment improper, and also contends that a finding of "adverse employment actions" may provide grounds for relief even if a finding of constructive dismissal is not supported by the record. We assess each argument in turn. I. Constructive Dismissal I. Constructive Dismissal We must consider de novo whether, as a matter of law, __ ____ Serrano failed to make a prima facie showing of constructive discharge. We have long applied an "objective standard" in determining whether an employer's actions have forced an employee -7- to resign. See, e.g., Calhoun v. Acme Cleveland Corp., 798 F.2d ___ ____ _______ ____________________ 559, 561 (1st Cir. 1986). For the transfer proposed by DFI to be deemed a constructive discharge, "'the trier of fact must be satisfied that the new working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign.'" Id. ___ (quoting Alicea Rosado v. Garc a Santiago, 562 F.2d 114, 119 (1st _____________ _______________ Cir. 1977)). An employee may not, therefore, be unreasonably sensitive to a change in job responsibilities.  It is undisputed that Serrano, when offered the position of "retail manager," was promised the same salary and benefits she enjoyed as comptroller. Salary considerations are important in determining whether a job transfer can support a claim of constructive dismissal. See Greenberg, 48 F.3d at 27 ___ _________ (noting no change in salary in course of finding no constructive dismissal) (collecting cases); Stephens v. C.I.T. Group, 955 ________ _____________ F.2d 1023, 1027 (5th Cir. 1992) (noting reduction of salary in course of finding constructive dismissal); Pe a v. Brattleboro ____ ___________ Retreat, 702 F.2d 322 (2d Cir. 1983) (finding no constructive _______ discharge where job responsibilities were changed without any reduction in pay); cf. N ez-Soto v. Alvarado, 918 F.2d 1029, ___ __________ ________ 1030-31 (1st Cir. 1990) (in political demotion case, demotion without salary cut found insufficient for constructive dismissal). Although important, the fact that salary and benefits have not been decreased has never been held to be a conclusive factor; courts applying the objective standard in -8- ADEA constructive dismissal cases consider a variety of often case-specific factors. See Greenberg, 48 F.3d at 27-29 ___ _________ (discussing salary in addition to assessing new work conditions); Stetson v. NYNEX Serv. Co., 995 F.2d 355, 360-62 (2d Cir. 1993) _______ ________________ (noting no decrease in salary, but focusing mainly on working conditions); see also Flaherty v. Gas Research Inst., 31 F.3d ________ ________ ___________________ 451, 457 (7th Cir. 1994) ("[A]n employer does not insulate itself from liability for discrimination simply by offering a transfer at the same salary and benefits."). Common sense suggests that a job transfer without a reduction in salary and benefits may, under certain circumstances, be unacceptable to a reasonable person who is overqualified and humiliated by an extreme demotion, or underqualified and essentially "set up to fail" in a new position. With this in mind, we turn to Serrano's situation. In the present case, the fact that after her transfer Serrano would remain the second highest salaried employee in DFI's airport organization takes on great importance, for the simple reason that this is one of few concrete facts we have regarding the position that she was offered. Serrano, by not trying out, or finding out more about, the newly created position, cannot possibly muster proof that, in the course of a trial, could lead a jury to find that the newly created position -9- would compel a reasonable person with her background to refuse the offer and resign.3  The precise contours of the new position, which appears to have been created for Serrano, are unclear. In view of Lozano's characterization of the new position, in his July 21, 1994 letter to Serrano, as one in which Serrano "would supervise and be responsible for the retail operation of our San Juan International Airport stores," it is impossible to conclude that the position would compel a reasonable person in Serrano's shoes to quit. Based on Serrano's own sworn statements, she had held general supervisory duties over the stores for Aeroboutiques (DFI's predecessor), and continued to hold supervisory responsibilities while also assuming accounting responsibilities in her position as comptroller for DFI. Serrano considers the move from comptroller to "retail manager" to be a devastating change in status, but cannot point to specific problems that would arise, other than the fact that she is unqualified to  ____________________ 3 Appellant's basic contention regarding the new position -- that it involved sales tasks she was not qualified or experienced enough to carry out -- rests on bare allegations that simply cannot be verified, because the position of "retail manager" did not exist before it was specially created for Serrano. It also follows that plaintiff's argument that the district court erred by not determining the exact nature of her duties as comptroller are misdirected. No additional precision regarding the nature of her position as comptroller could help her, in view of the lack of evidence regarding her proposed position. Moreover, Serrano's background included a broad variety of managerial tasks besides strictly financial ones, having served previously as assistant general manager as well as comptroller. When we do consider Serrano's description of her duties, we find that the fluid nature of managerial responsibilities in DFI's organization only makes speculation about the position of "retail manager" more unreliable. -10- "push" merchandise. She cannot prove, however, that the newly created position of "retail manager" would involve a sufficient amount of daily, hands-on sales work to compel a reasonable person in Serrano's position to resign. Serrano's constructive discharge claim, therefore, rests on speculations regarding the new position, as well as on her sworn statements to the effect that supervising retail sales would harm her dignity. Loss of prestige in a job transfer, standing alone, cannot support a finding of constructive discharge. See Alicea Rosado, 562 F.2d ___ ______________ at 119-20 ("[A] limited blow to one's pride or prestige does not provide reason enough to resign during whatever period may be required to seek judicial relief.").  Of course we cannot state with absolute certainty that the position offered to Serrano would not have turned out to be strongly objectionable to a reasonable person, as Serrano suggests. But, in the summary judgment context, we need not do so. The decisive consideration here is that, by not accepting the newly created and ambiguous position, Serrano foreclosed the possibility of presenting concrete evidence, rather than mere assertions, to a jury regarding the nature of her new working conditions. See Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at ___ ________ 257 (to oppose summary judgment motion, plaintiff cannot rely on assertions in pleadings and must come forward with evidence that a jury could consider). We have long expected that those who seek to initiate ADEA claims will do so while still employed, and the instant case reminds us of the wisdom of this expectation. -11- See, e.g., Cazzola v. Codman & Shurtleff, Inc., 751 F.2d 53, 55 ___ ____ _______ ________________________ (1st Cir. 1984) ("Even the victim of unlawful discrimination is expected to seek legal redress while still employed unless actually fired, or constructively discharged due to a 'drastic reduction in the quality of working conditions.'" (quoting Alicea ______ Rosado, 562 F.2d at 119-20)). Here, with no evidence of a ______ drastic reduction in work conditions sufficient to support Serrano's resignation, summary judgment is appropriate. Moreover, other factual circumstances tending to strengthen a case for constructive dismissal were not present here. There was no evidence, for example, of suggestions by the management of DFI that Serrano take an early retirement.4 Cf. ___ Calhoun, 798 F.2d at 564 (jury's finding of constructive _______ discharge bolstered by evidence of repeated inquiries regarding early retirement). There was also very little in the way of evidence showing animosity toward Serrano on account of her age.5 Cf. Greenberg, 48 F.3d at 28 (finding of no constructive ___ _________  ____________________ 4 Serrano's contention that DFI's grant of a 48-hour period to reconsider the offered job transfer -- one that she had already turned down -- was a "humiliating action" designed to lead her to resign is very difficult to accept. The July 21, 1994 letter from Lozano to Serrano which describes the 48-hour reconsideration period also states, "I want to make it absolutely clear to you that no one in the Company (DFI Puerto Rico, Inc.) intends or desires to fire you as an employee of DFI." 5 On appeal, Serrano places great emphasis on the assertion that she was replaced, in her capacity as comptroller, by a younger woman. Assuming this is correct, she does not contend that this occurred prior to her resignation. Therefore, while this fact may be related to issues of pretext, it is unrelated to our finding that Serrano fails to satisfy the third (constructive discharge) part of the McDonnell Douglas prima facie case. _________________ -12- discharge "buttressed by the fact that [the employee] couples his allegation of constructive discharge with virtually no evidence that [the employer's] motives stemmed from an animosity towards age."). All of these considerations lead us to the conclusion that the district court properly found that Serrano failed to establish a prima facie case.  II. Adverse Employment Actions II. Adverse Employment Actions Serrano contends that the district court erred by failing to consider whether she had established a prima facie case of "adverse employment actions," as distinguished from the issue of constructive dismissal. Based on the recitation of damages in Serrano's amended complaint, however, her suit is plainly one seeking a remedy for improper dismissal, and not one seeking a remedy for adverse employment actions. Her allegations regarding damages consist of the following: lost income and benefits from the date she was forced to resign, and various other damages she and her husband have incurred arising out of the economic hardship brought about by her dismissal. All of Serrano's alleged economic harms would not have come about had Serrano accepted the position, which offered the same salary and benefits. See Shealy v. Winston, 929 F.2d 1009, 1012 n.2 (4th ___ ______ _______ Cir. 1991) (finding no constructive discharge and holding there is no further ground for relief on theory of adverse employment action, because "appellant would then face the barrier of proving any damages when he clearly would have been employed . . . at the same salary and benefits."). For example, the removal of various -13- responsibilities from Serrano in the months preceding the proposed transfer, if they are seen as separable from her resignation, cannot, even if proven to be discriminatory, support this suit for lost income and benefits. Given the way Serrano has framed this lawsuit, relief cannot stem from a finding that the actions of DFI, short of leading to her dismissal, were discriminatory adverse employment actions.6 CONCLUSION CONCLUSION For the reasons stated in this opinion, the district court's grant of summary judgment is affirmed. ________  ____________________ 6 In fact, for substantially the reasons discussed with regard to constructive dismissal, Serrano fails to establish a prima facie case under the ADEA of adverse employment action on the basis of the proposed job transfer. See Flaherty, 31 F.3d at ___ ________ 457; Crady v. Liberty Nat'l Bank & Trust Co., 993 F.2d 132, 135- _____ ______________________________ 36 (7th Cir. 1993) (finding failure to make prima facie case of adverse employment action where employee, claiming adverse change in job responsibilities, did not accept transfer position at same salary and therefore could not substantiate claims about that position). -14-