Carmen **ORTIZ RODRIGUEZ**, Plaintiff,

v.

**BANCO POPULAR DE PUERTO RICO**, Defendant.

Civil No. 98–1322(JP).

United States District Court,
D. Puerto Rico.

Dec. 2, 1998.

---

María Bobonis–Zequeira, Woods & Woods, San Juan, PR, for Plaintiff.

Beatriz M. Rodríguez, Fiddler, González & Rodríguez, Mildred Arroyo–Figueroa, Ivette M. Berríos Law Office, San Juan, PR, for Defendant.

## OPINION AND ORDER

PIERAS, Senior District Judge.

### I.  Introduction

The Court has before it Defendant's Motion for Summary Judgment (**docket No. 22**), Plaintiff's Opposition to Motion for Summary

Judgment (docket No. 28), and Banco Popular's Reply Brief (docket No. 34). This case arises out of Plaintiff Carmen Ortiz Rodríguez's claims against Defendant Banco Popular of age and gender discrimination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, and Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. § 2000e. In addition, Plaintiff brings supplemental state law claims alleging that she was constructively discharged, seeking damages under the Puerto Rico Wrongful Discharge Act, Law 80 of May 30, 1976, 29 L.P.R.A. § 185(a), as well as damages for mental anguish and suffering under Article 1802 of the Puerto Rico Civil Code.

## II. Uncontested Facts

Plaintiff has failed to contest the majority of facts proffered by Defendant, and therefore, pursuant to Local Rule 311.12, the following facts are deemed admitted. (Def.'s Statement of Uncontested Facts; Pls.' Statement of Material Facts Supp. Pl.'s Opp'n. Mot. Summ. J.)[1]

Plaintiff Ortiz is a 48 year old female, born on July 16, 1950. Ortiz began working at Banco de Ponce on July 31, 1978 in the Cash Verification area of the bank's Cash Deposit facility. On September 1, 1990, Ortiz started working as a Supervisor in the Currency Verification area of the Cash Depot division under the supervision of Manuel Vaello. When Banco de Ponce merged with Banco Popular in 1990, Ortiz became an employee of Banco Popular.

Ortiz's job performance was evaluated annually, and her performance evaluations for the years 1990 through 1995 indicate that her job performance fell within the category of "Achieved Expectations," the second of three categories that include "Exceeded Expectations," and "Objections Partially Achieved."[2] In addition, Ortiz received various forms of recognition for her job performance at Banco Popular, including Christmas bonuses.

After Banco de Ponce's merger with Banco Popular, the Cash Depot facility was transferred to Banco Popular, and Ortiz remained working in her same position and was still supervised by Vaello. The Cash Depot is Puerto Rico's representative of the Federal Reserve Bank of New York, and thus, the Federal Reserve performs a yearly audit. Any mistake in operations is considered significant, and if even a minor mistake in operations is detected by an audit, it must be immediately corrected. The Cash Depot handles between eight and ten million dollars daily by supplying affiliated banks with money to comply with minimum cash reserves per dollars deposited, and by collecting surplus cash from affiliated banks and delivering it to the Federal Reserve Bank.

In addition, the Cash Depot facility accepts currency and coin deposits from financial institutions located in Puerto Rico, and wires, on a daily basis, all deposits and withdrawals made by financial institutions within Puerto Rico and the U.S. Virgin Islands to the Federal Reserve Bank of New York. The Cash Depot also verifies all currency and coin deposits, sorts the money by denomination, and piece counts currency deemed fit for re-circulation. All money that is deemed unfit is forwarded to the Federal Reserve Bank of New York, along with large dollar denominations. The Cash Depot is also responsible for withdrawing counterfeit notes from the currency that is piece counted, and such currency must be marked as "counterfeit" and turned over to the U.S. Secret Service. Currencies no longer issued are also forwarded to the Federal Reserve Bank of New York to be destroyed.

As Supervisor in the Cash Depot's Cash Verification area, Ortiz had nine employees who worked as cash verifiers under her direct supervision. On April 25, 1991, Ortiz received and signed a disciplinary memo regarding a mistake she made in relation to a load of cash sent by the Cash Depot to the

---

**1.** The Court addresses more fully below Defendant's claim that Plaintiff violated Local Rule 311.12 in her Statement of Uncontested Facts.

**2.** Plaintiff mischaracterizes the results of the job evaluations in her Statement of Uncontested Facts. She claims they indicate she "exceeded

the objectives of her duties." (Pls.' Statement of Material Facts Supp. Pl.'s Opp'n. Mot. Summ. J. ¶ 18). The documents themselves, however, clearly indicate that her scores all fell within the middle category of "Achieved Expectations."

Federal Reserve in the amount of $25,000,-000.00 which reflected a $200,000.00 discrepancy. When the discrepancy was initially discovered, the Federal Reserve and Banco Popular conducted an investigation, which revealed that Ortiz had made two major operational mistakes in her duties as a supervisor. Although the $200,000.00 was eventually located, Ortiz was warned that the mistakes were very serious, and that her tenure at the bank was at stake.

On May 13, 1996 Ortiz received and signed another disciplinary memo related to a Federal Reserve audit performed that year, which revealed significant errors in the Cash Depot. The audit showed that an employee under Ortiz's supervision had manipulated eight accounts through fraudulent accounting entries, and these entries had been authorized by Ortiz. At the time, Ortiz was not the only supervisor who authorized the employee's fraudulent entries, but her supervisor Vaello and Eufemio Santos also authorized these accounting entries.

During 1996, Vaello told Ortiz that the Currency Verification area would be responsible for marking and identifying all false bills with a "counterfeit" stamp. During 1997, the Federal Reserve conducted an audit for the period ending on March 6, 1997, in which auditors noticed that seven out of a sample of 21 bills were not marked as "counterfeit" prior to being turned over to a clerk. Ortiz admits that it was the duty of the employees under her supervision and, ultimately, her responsibility to make sure that false bills were marked with the "counterfeit" stamp.

On April 1, 1997, Banco Popular decided to transfer Ortiz to the Central Cashier division as a teller with duties as a Coordinator, also eliminating a one-month old salary raise she had been granted. Except for the elimination of the salary raise, and notwithstanding the change in position and duties which included a lack of supervisory responsibility, Ortiz's salary and benefits remained the same. Ortiz never returned to work, neither to her former position nor to the new position.

After Ortiz was notified that she would be transferred from her position at the Cash Depot facility, she requested a meeting with Aida C. de Canto from the Human Resources department of Banco Popular. During this meeting, Ortiz explained that she disagreed with the corrective measures taken by the bank, and said that she would only work in the new division if the written reprimand was eliminated from her personnel file, if she was given the recent raise she was granted, and if she retained her title as supervisor. On July 11, 1997 Ortiz submitted a letter of resignation and resigned from her position and duties at Banco Popular. Ortiz's former position at the Cash Depot was filled by a woman named Ana Morales, who is 30 years old.

## III. Discussion

### A. Summary Judgment in the Context of Age and Sex Discrimination Claims

■ Defendant first argues that Plaintiff has failed to satisfy her burden under *McDonnell Douglas Corp. v. Green* to present a prima facie case of either sex or age discrimination. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Based on the framework set out in *McDonnell Douglas,* and in the absence of direct evidence of discrimination, a plaintiff must first establish by a preponderance of evidence that (1) he or she is a member of a protected class; (2) his or her job performance was sufficient to meet [his or her employer's] legitimate job expectations; (3) he or she was actually or constructively discharged; and, (4) [the employer] sought a replacement with roughly equivalent qualifications. *See Greenberg v. Union Camp Corp.,* 48 F.3d 22, 26 (1st Cir. 1995) (citations omitted). As noted by the First Circuit, "[t]he required prima facie showing is not especially burdensome...." *Woodman v. Haemonetics Corp.,* 51 F.3d 1087, 1091 (1st Cir.1995).

Once a prima facie case is established, the burden shifts to the defendant to produce a valid non-discriminatory reason for the adverse employment action. *See Mulero–Rodriguez v. Ponte, Inc.,* 98 F.3d 670, 672 (1st Cir.1996). The defendant's burden under the

*McDonnell Douglas* framework is only a burden of production; the burden of persuasion remains with the plaintiff. *See Sanchez Sepulveda v. Motorola Electronica De Puerto Rico, Inc.,* 988 F.Supp. 34, 37 (D.Puerto Rico 1997) (Pieras, J.). After a defendant has made such a showing, "the presumption raised by the prima facie case is rebutted and drops from the case." *Id.* (citing *Hidalgo v. Overseas Condado Ins. Agencies, Inc.,* 120 F.3d 328, 332 (1st Cir.1997)). In the final stage, the burden of production returns to the plaintiff who must show that the defendant's stated reason for the adverse employment action was false and a pretext for the real motive, age or sex discrimination. *Mulero–Rodriguez,* 98 F.3d at 673.

Under Rule 56(c) of the Federal Rules of Civil Procedure, Summary judgment is appropriate where, after drawing all reasonable inferences in favor of the non-moving party, there is no genuine issue of material fact for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is material if, based on the substantive law at issue, it might affect the outcome of the case. *Id.* at 248, 106 S.Ct. 2505; *Mack v. Great Atl. and Pac. Tea Co., Inc.,* 871 F.2d 179, 181 (1st Cir.1989). A material issue is "genuine" if there is sufficient evidence to permit a reasonable trier of fact to resolve the issue in the non-moving party's favor. *See Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.; *Boston Athletic Ass'n v. Sullivan,* 867 F.2d 22, 24 (1st Cir.1989).

The party opposing summary judgment may not rest upon mere allegations or denials of the pleadings, but must affirmatively show, through the filing of supporting affidavits or otherwise, that there is a genuine issue for trial. *See Goldman v. First National Bank of Boston,* 985 F.2d 1113, 1116 (1st Cir.1993); *First Nat. Bank of Ariz. v. Cities Serv. Co.,* 391 U.S. 253, 288–89, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968). To survive a motion for summary judgment in the context of an ADEA or Title VII case, "a plaintiff must establish at least a genuine issue of material fact on every element essential to his case in chief." *Vega,* 3 F.3d at 479 (quoting *Mesnick v. General Electric Co.,* 950 F.2d 816, 823 (1st Cir.1991)). Thus, at the

prima facie stage and again at the third stage, a plaintiff must adduce "some minimally sufficient evidence to support a jury finding that he has met his burden." *Id.* Ultimately, the non-movant must provide specific facts supporting her claim that the real reason behind the employer's decision was discrimination or driven by "discriminatory animus." *See LeBlanc v. Great American Ins. Co.,* 6 F.3d 836, 841 (1st Cir.1993); *Medina–Munoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 9 (1st Cir.1990).

### 1. Plaintiff's Prima Facie Case

Defendant first argues that Ortiz failed to satisfy her prima facie case for both her age and sex discrimination claims. Specifically, Banco Popular claims that she has not met prong two, that her performance was sufficient to meet Banco Popular's legitimate job expectations, and prong three, that she was actively or constructively discharged. *See Greenberg,* 48 F.3d at 26. Further, Defendant argues that she failed to satisfy prong four of her sex discrimination claim, that Banco Popular sought a replacement with roughly equivalent qualifications. *See id.*

■ It is undisputed that Plaintiff has met the first prong of her prima facie case for both sex and age discrimination, as she is a 48 year old female. Defendant, however, asserts that even though Ortiz received favorable employee evaluations, this is not sufficient to show that she met Banco Popular's legitimate job expectations, the second prong of the prima facie case. Defendant claims that two written reprimands, which are also the reason given by Defendant for Ortiz's transfer and the adverse employment action claimed by Ortiz, show she was not adequately performing her job. duties. Defendant, however, attempts to incorporate its own burden to articulate a legitimate non-discriminatory reason for transferring Ortiz into the legitimate job expectation prong of the prima facie case. *See Brennan v. GTE Government Systems Corp.,* 150 F.3d 21, 27 (1st Cir.1998). Such a requirement would be an " 'onerous' endeavor, beyond the confines of a prima facie case." *Id.* Rather, the "gauge" for determining whether a plaintiff has met the second prong of her prima facie case is

"whether the employee has a record of performing acceptably and meeting the demands of his job." *Id.*

Ortiz has provided evidence that she consistently received employee evaluations ranking her in the category of "Achieved Expectations," which includes total performance scores from 90% to 119%.[3] Plaintiff's scores consistently fell within this category, ranging from a low of 102 to a high of 117. Comments on Ortiz's evaluations indicate that she was performing her job at least satisfactorily, and include statements such as: "Her efforts have achieved efficiency and control in the department," (1990 period); "Her contribution to the learning and training for new cash processing equipment was a crucial element in the proper functioning of the equipment." (1993 period); "Her achievements were recognized by officials of the Federal Reserve Bank of New York." (1993 period); "During the evaluation period she participated in the two interventions performed by the auditors of the Federal Reserve Bank of New York and the internal auditors, obtaining a Highly Satisfactory and Satisfactory rating, respectively." (1994–95 period); and, "In addition, our Institution recognized her achievements granting her a medal of Excellence." (1994–95 period).

The Court finds that the performance reviews proffered by Ortiz are sufficient to satisfy her burden at the prima facie stage to at least create a genuine issue for trial that she met her employer's legitimate job expectations. *See Brennan,* 150 F.3d at 27 (sufficient evidence of meeting legitimate job expectations consisted of acceptable rankings in employment reviews and positive comments); *Woodman v. Haemonetics Corp.,* 51 F.3d 1087, 1092 (1st Cir.1995) (substantial wage increases and ten years of positive performance reviews, with only one negative evaluation five days prior to reduction in force, was sufficient to meet second prong of prima facie case).

Defendant next attacks Plaintiff's claim that she was constructively discharged, and asserts that she has failed to meet prong three of her prima facie case which requires a showing of either actual or constructive discharge. Defendant argues that because Plaintiff never showed up at her new position, she had no knowledge of her duties or the new work conditions. Thus, Defendant essentially asserts that because Ortiz never even tried to work in her new position, she cannot reasonably claim that her new working conditions would have involved a "drastic reduction" in the circumstances of her employment. Plaintiff, on the other hand, argues that evidence including that she was an employee with over 20 years of experience, including supervisory experience, who was transferred to a lesser position from Banco Popular's central branch to a smaller branch, and who was not given a salary raise that she had previously been awarded, is sufficient to demonstrate a constructive discharge.

In determining whether a transfer can be considered a constructive discharge, the First Circuit has held that "for the transfer . . . to be deemed a constructive discharge 'the trier of fact must be satisfied that the new working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign.' " *Serrano–Cruz v. DFI Puerto Rico, Inc.,* 109 F.3d 23, 26 (1st Cir. 1997) (citing *Calhoun v. Acme Cleveland Corp.,* 798 F.2d 559 (1st Cir.1986) (quoting *Alicea Rosado v. Garcia Santiago,* 562 F.2d 114, 119 (1st Cir.1977))). Thus, based on an objective standard, an employee may not "be unreasonably sensitive to a change in job responsibilities." *Id.*

Courts have considered a variety of "case-specific" factors in determining whether a job transfer can be considered a constructive dismissal. *See id.* A decrease in salary and benefits is one factor considered in constructive discharge cases, but the fact that salary and benefits have not been decreased is not dispositive. *See id.* (citations omitted). Other factors include the fact that an employee is demoted from a supervisory position, *see Stephens v. C.I.T. Group/Equipment Financing, Inc.,* 955 F.2d 1023, 1027 (5th Cir.1992),

---

**3.** The other two categories of job performance in Banco Popular's performance reviews and their respective scores are: (1) "Exceeded Expecta-tions," with scores from 120% to 140%, and (2) "Objectives Partially Achieved," with scores from 60% to 89%.

and that the new employment conditions would be humiliating or demeaning, *see Greenberg v. Union Camp Corp.*, 48 F.3d 22, 27 (1st Cir.1995). In Defendant's focus on the fact that Ortiz never worked in her new position, it cites to the First Circuit decision in *Serrano–Cruz* in support of its argument that Ortiz cannot provide enough evidence of a constructive discharge.

■ The *Serrano–Cruz* Court upheld the district court's granting of a motion for summary judgment because the plaintiff, who had quit before starting his new position, had failed to present sufficient evidence that his working conditions in the new position were inferior. *Serrano–Cruz*, 109 F.3d at 27. The Court emphasized that if the plaintiff had actually worked in his new position, he would have been able to offer concrete evidence, rather than mere assertions, that his new position was inferior. *Id.* While the facts in *Serrano–Cruz* are similar to facts in the case at hand, there are significant differences. The plaintiff in *Serrano–Cruz* based his constructive discharge argument on the fact that the new position involved a significant "loss in prestige." *Id.* A loss of prestige, standing alone, cannot support a finding of constructive discharge. *Id.* (citing *Alicea Rosado*, 562 F.2d at 119–20.)

Ortiz, however, bases her arguments on the undisputed facts that her new position involved a loss of supervisory responsibility, transfer to a smaller branch, and loss of salary raise. These claims, unlike in *Serrano–Cruz*, are not "intangible," and Ortiz need not present additional evidence from her experience in the new position to support her claims about the new position. The fact that Ortiz lost her salary raise and was demoted to a position without supervisory responsibilities is sufficient to show that Ortiz was constructively discharged.[4] Thus, Ortiz has satisfied the third prong of her prima facie case.

■ Defendant also argues that Ortiz has not satisfied the fourth prong of the prima facie case in her sex discrimination claim as she was replaced by a woman, someone from the same protected class as Plaintiff. Plaintiff, however, correctly points out that the First Circuit has held that "in a case where an employee claims to have been discharged in violation of Title VII, she can make out the fourth element of her prima facie case without proving that her job was filled by a person not possessing the protected attribute." *Cumpiano v. Banco Santander Puerto Rico*, 902 F.2d 148, (1st Cir.1990). In other words, a plaintiff can satisfy the fourth prong of her prima facie case "simply by showing that ... the employer had a continued need for 'someone to perform the same work after [the complainant] left.'" *Id.* (quoting *Lipsett v. University of Puerto Rico*, 864 F.2d 881, 899 (1st Cir.1988)). It is undisputed that Plaintiff's position was filed by Ana Morales; therefore, she has satisfied her burden to show that Banco Popular had a continued need for someone to perform in her position after she was transferred.

**2. Defendant's Legitimate Non–Discriminatory Reason and Plaintiff's Evidence of Pretext**

■ As Plaintiff has satisfied her burden of adducing evidence to support her prima facie case, Defendant must articulate a nondiscriminatory reason for transferring Ortiz to a lesser position. See *Mulero–Rodriguez*, 98 F.3d at 672. Defendant has proffered several reasons for transferring Ortiz out of her supervisory position. These reasons are that Ortiz made operational mistakes involving the amount of $200,000.00, that she authorized fraudulent accounting entries, and that she failed to stamp counterfeit bills. The Court finds these reasons sufficient to satisfy Defendant's burden to come forth with a legitimate nondiscriminatory reason for its transfer of Ortiz. Thus, Plaintiff must

---

4. Defendant argues that the Plaintiff must make an additional showing that Banco Popular "deliberately" made her working conditions so intolerable that she was forced to resign. Defendant correctly points out, however, that the while other courts have required a showing of deliberate conduct by the employer, *see, e.g. EEOC v. Clay Printing Co.*, 955 F.2d 936 (4th Cir.1992); *Young*

*v. Southwestern Savings and Loan Association*, 509 F.2d 140 (5th Cir.1975), the First Circuit has not expressly adopted this "deliberateness" standard. Until the First Circuit speaks on this issue, this Court will not impose an additional showing of deliberateness on Plaintiff at the prima facie stage.

now prove both that Banco Popular's articulated reason is false, and that discrimination was the actual reason for its employment action. *See Id.; Woods v. Friction Materials, Inc.,* 30 F.3d 255, 260 (1st Cir.1994).

Plaintiff argues that the Court can infer she was dismissed because of her age and sex based on the evidence she presented in support of her prima facie case. Specifically, Ortiz claims that based on her performance evaluations, one can infer that she was meeting Banco Popular's employment expectations and that the only reason for her transfer could be age or sex discrimination.

To survive summary judgment Plaintiff must provide specific evidence of a "discriminatory animus" based on age or sex. *See Vega v. Kodak Caribbean, Ltd.,* 3 F.3d 476, 479 (1st Cir.1993); *Medina–Munoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 9 (1st Cir.1990). She must offer evidence that both Defendant's proffered reason was "merely a ruse," and that the reason for her transfer was a pretext for age or sex discrimination. *See Smith v. Stratus Computer Inc.,* 40 F.3d 11, 17 (1st Cir.1994) (plaintiff on summary judgment in Title VII case must adduce sufficient evidence to support a finding that defendant's evidence was not only a pretext, but a pretext for illegal sex discrimination); *Medina–Munoz,* 896 F.2d at 9 (plaintiff must show "significantly probative" evidence that defendant's evidence of pretext masked age discrimination). Ortiz fails on both counts; she does not provide sufficient evidence that Banco Popular's reason for her transfer is illegitimate, and further, she does not provide any credible evidence that the real reason for her transfer was age or sex discrimination.

In order for a factual dispute to permit a plaintiff to survive summary judgment, there must be "definite, competent evidence," and not "[o]ptimistic conjecture, unbridled speculation, or hopeful surmise." *Vega,* 3 F.3d at 479 (citations omitted). As Defendant points out in its Reply Brief, much of Plaintiff's "evidence" merely consists of speculation and conclusory allegations. Defendant asserts that many of Plaintiff's "Uncontested Facts" violate Local Rule 311.12 or the "anti-ferret" rule. In exploring the implications of Rule 311.12, the Court has concluded that facts that are "filled with speculation, generalities, conclusory assertions and, for lack of a better phrase, a lot of 'hot air' " do not comply with the requirements of Local Rule 311.12. *Dominguez v. Eli Lilly and Co.,* 958 F.Supp. 721, 728 (D.Puerto Rico) *aff'd* 141 F.3d 1149, 1998 WL 112515 (1st Cir.1998) (unpublished disposition). Such facts cannot be used to allow the non-moving party to survive summary judgment. *See id.*

The following statements have been offered by Plaintiff as evidence in support of her Opposition to Summary Judgment. The Court agrees with Defendant that these statements are merely speculative and conclusory assertions which are not sufficient under either Federal Rule 56 and Local Rule 311.12. Plaintiff's conclusory assertions include: (1) When Banco Popular acquired Banco de Ponce, Ortiz continued working at Banco Popular in the Federal reserve Department. *Since that time defendant established a pattern of conduct of dismissing persons 10 years and older and women;* (2) From the latter part of 1994 and 1995 until the time of the dismissal of Ortiz, *Banco Popular initiated a discriminatory campaign against because of her age and/or sex-gender;* (3) Ortiz alleges her discriminatory and illegal termination made under the false pretense and/or pretext that Ms. Ortiz had incurred in some alleged wrongdoing, which was not explained in detail to Ortiz. Defendant's officers merely expressed to her that she was not keeping up with her duties as an employee of the Bank. *The decision was, according to Ortiz also made willfully, maliciously and intentionally and with knowledge that Banco Popular was violating the laws or in reckless disregard for the laws.* (Pls. Opp'n ¶¶ 11, 12, 16) (emphasis added to portions of the contested facts the Court believes are mere speculation or conclusory). As these statements are conclusory, and stand alone in Plaintiff's affidavit without any additional proof, they do not assist Ortiz in surviving summary judgment.

Aside from Plaintiff's conclusory statements, Ortiz offers little evidence to show pretext and that sex or age was the determining factor in her transfer. Plaintiff

claims that her supervisor Vaello and Eufemio Santos also authorized fraudulent accounting entries. This evidence, standing alone, is not enough to show that Banco Popular's asserted reason for Ortiz's transfer is pretext. Aside from the fraudulent entries, Defendant gave two additional reasons for Plaintiff's transfer, which have not been contested. Second, Plaintiff offers what appears to be a list of names, hire dates, and birth dates of Banco Popular employees.[5] Aside from stating that from 1996 to the present, "over 6% of those hired are over 40 years," Plaintiff makes no effort to explain this document. (Pl.'s Statement Material Facts Supp. Pl.'s Opp'n. To Mot. Summ. J. ¶ 13). It is unclear from the exhibit itself whether the listed employees are employees from a specific department or branch of Banco Popular, whether they are in Plaintiff's position at Banco Popular, or any other material information relevant to Plaintiff's assertion that this exhibit supports her claim of age discrimination. Thus, the Court finds that this exhibit is not sufficient to create a triable issue of material fact regarding Plaintiff's claims of age discrimination.

In addition, Plaintiff offers no further evidence of pretext or that she was dismissed because of her sex. Therefore, as Ortiz has not met her burden for summary judgment under the *McDonnell Douglas* burden-shifting framework, the Court has no choice but to **GRANT** summary judgment for Defendant and **DISMISSES** Plaintiff's claims under Title VII and the ADEA. As there is no independent basis for federal jurisdiction over Plaintiff's supplemental state-law claims, the Court declines to accept supplemental jurisdiction over Plaintiff's claims under Puerto Rico law. *See* 28 U.S.C. § 1367(c)(3). Therefore, the Court hereby **DISMISSES** Plaintiff's supplemental claims under Puerto Rico Law **WITHOUT PREJUDICE.**

### IV. Conclusion

The Court finds that Plaintiff Ortiz has proffered sufficient evidence to support her prima facie case of sex and age discrimination. Ortiz's adequate scores on her performance evaluations, along with the comments made by her reviewing supervisors, show she has satisfied her employer's legitimate job expectations. In addition, the fact that Ortiz was transferred to a non-supervisory position and that her salary increase was taken away is sufficient to show a constructive discharge. Finally, although Ortiz was replaced by a woman, she is not precluded from proving her prima facie case of sex discrimination. Ortiz showed that her employer had a continued need for an employee in her position, thus satisfying the fourth prong of her prima facie case.

The Court, however, must **GRANT** summary judgment for Defendant as Plaintiff has not provided the Court with sufficient credible evidence that Defendant's reason is a pretext, and that the real reason for Ortiz's transfer was sex or age discrimination. In addition, the Court declines to exercise jurisdiction over Plaintiff's supplemental claims under Puerto Rican law and **DISMISSES** these claims **WITHOUT PREJUDICE.**

SO ORDERED.

---

5. Although Defendant has not objected to this exhibit, the Court notes that the exhibit itself, aside from page numbers of 0000313 through 0000332, bears no indication of its identity. It is not even clear that the employees listed are Banco Popular employees. As Defendant has not made any objection to the exhibit, the Court assumes it has stipulated to its authenticity for the purposes of summary judgment.