USCA1 Opinion

 

 United States Court of Appeals
 For the First Circuit
 ____________________

No. 98-1748

 PAULA TARDIE,

 Plaintiff, Appellant,

 v.

 REHABILITATION HOSPITAL OF RHODE ISLAND, ET AL.,

 Defendants, Appellees.

 ____________________

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF RHODE ISLAND

 [Hon. Ronald R. Lagueux, U.S. District Judge]

 ____________________

 Before

 Torruella, Chief Judge,

 Coffin, Senior Circuit Judge,

 and Boudin, Circuit Judge.

 _____________________

 Peter J. Cerilli, with whom Cerilli, McGuirl & Bicki were on
brief, for appellant.
 James M. Paulson, with whom Jaclyn L. Kugell and Morgan, Brown
& Joy were on brief, for appellees.

 ____________________

 February 24, 1999
 ____________________ TORRUELLA, Chief Judge. This appeal involves an action
filed by plaintiff-appellant Paula Tardie against her employer, the
Rehabilitation Hospital of Rhode Island ("RHRI"), and its parent
organization, the Braintree Hospital Rehabilitation Network
("Braintree") (collectively, "appellees"). Tardie alleges that she
was discharged from her position as Director of Human Resources at
RHRI due to her disability and while she was on medical leave. On
May 29, 1998, the district court entered summary judgment against
Tardie's claims. Tardie appeals, and we affirm.
 BACKGROUND
 In January of 1990, Tardie began working as a personnel
assistant in the Human Resources Department at Braintree. Tardie
subsequently received several promotions, and in late 1993, Tardie
was selected by her supervisor, Richard Horne, to establish the
Human Resources Department at the newly-formed RHRI. One of
Tardie's tasks in setting up the department was drafting the job
description of the Director of Human Resources at RHRI. That job
description gave a summary of the position and outlined the
essential qualifications, requirements, and functions of the
position. One of the listed requirements was "ABILITY TO MAINTAIN
ASSIGNED WORK HOURS: Has sufficient endurance to perform tasks
over long periods of time." 
 In January of 1994, Tardie was appointed as Director of
Human Resources at RHRI. In this position, Tardie earned a salary
of approximately $50,000 per year and worked "anywhere from 50 to
70 hours per week." In July of 1994, Tardie began to experience
chest pain, shortness of breath, numbness in her arms, and
dizziness. Tardie's doctor conducted tests on her heart and found
results consistent with a left atrial enlargement. Tardie was then
placed on medical leave of absence from July 26 through
September 6, 1994. Horne, who was still Tardie's supervisor,
called Tardie, and Tardie told him that she believed that working
excessive hours was causing the symptoms. Horne offered to return
Tardie to her former position at Braintree, and Tardie accepted the
offer. Tardie wrote a "thank you" note to Horne, thanking him for
all he had done for her, apologizing that she "couldn't do it," and
stating that she "gave it [her] best." Tardie testified in her
deposition that, by "it," she meant the long hours of the position.
 On August 16, 1995, Horne and Tardie met to discuss the
status of her employment. Horne stated that there were no
available positions at RHRI, but that he would create a part-time
position as a recruiter at Braintree if Tardie was interested.
Otherwise, Horne offered to assist her in obtaining a severance
package from RHRI and finding employment with another company. 
Rather than resign or allow Horne to create the part-time position,
Tardie called Donald Burman, the Chief Executive Officer of RHRI,
and told him that she intended to return to RHRI. She stated that
she would gradually increase her working hours to a maximum of
forty hours per week, but that she could no longer work the
extended hours she had been working. Burman agreed and stated that
they could work it out. Tardie then called Horne, who told her
that he could justify adding a part-time person to assist Tardie
and that he would present this idea to Burman.
 Horne, Burman and Lisa LaDew, Chief Operating Officer at
RHRI, then met to discuss Tardie's situation. Tardie alleges that
Horne, Burman and LaDew discussed her medical condition and assumed
that she suffered from an enlarged heart. The three individuals
decided not to reinstate Tardie as Human Resources Director because
they determined that Tardie could not perform the job while working
only forty hours per week. Horne called Tardie to inform her of
the decision and told her that she needed to discuss the matter
with Burman. Burman later explained to Tardie the basis for the
decision and offered to put together a severance package for her. 
A package was later offered, but Tardie refused to accept it. 
 On November 27, 1996, Tardie filed a complaint against
RHRI and Braintree in United States District Court for the District
of Rhode Island. Tardie alleged that her discharge violated:
(1) the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29
U.S.C. 791 et seq.; (2) the Americans with Disabilities Act of
1990 ("ADA"), 42 U.S.C. 12101 et seq.; (3) the Family and Medical
Leave Act of 1993 ("FMLA"), 29 U.S.C. 2601 et seq.; (4) the Rhode
Island Civil Rights of Individuals with Handicaps Act ("RICRIHA"),
R.I. Gen. Laws 42-87-1 et seq.; (5) the Rhode Island Fair
Employment Practices Act ("FEPA"), R.I. Gen. Laws 28-5-1 et seq.;
and (6) the Rhode Island Parental and Family Medical Leave Act
("PFMLA"), R.I. Gen. Laws 28-48-1 et seq. After the close of
discovery, appellees moved for summary judgment on all counts. The
district court granted appellees' motion, finding: (1) that Tardie
was unable to demonstrate that she suffered from a "disability" or
was perceived as suffering from a "disability" under the ADA or
Rehabilitation Act, and (2) that Tardie was unable to work fifty to
seventy hours per week, which was one of the essential functions of
her position. The district court entered judgment against all of
Tardie's claims on May 28, 1998, and this timely appeal followed.
 DISCUSSION
 Tardie argues that the district court erred in entering
summary judgment against her six causes of action. Summary
judgment is proper where "the pleadings, depositions, answers to
interrogatories, and admissions on file, together with affidavits,
if any, show that there is no genuine issue as to any material fact
and that the moving party is entitled to judgment as a matter of
law." Fed. R. Civ. P. 56(c). Once the moving party has pointed to
the absence of adequate evidence supporting the nonmoving party's
case, the onus is on the nonmoving party to present facts that show
a genuine issue for trial. See Serrano-Cruz v. DFI Puerto Rico,
Inc., 109 F.3d 23, 25 (1st Cir. 1997); LeBlanc v. Great American
Ins. Co., 6 F.3d 836, 841-42 (1st Cir. 1993), cert. denied, 511
U.S. 1018 (1994). "[A] party opposing a properly supported motion
for summary judgment may not rest upon mere allegation or denials
of his pleading, but must set forth specific facts showing that
there is a genuine issue for trial." Anderson v. Liberty Lobby,
Inc., 477 U.S. 242, 256 (1986)(citing Fed. R. Civ. P. 56(e)).
"[P]laintiff . . . [must] offer[] . . . 'significant probative
evidence tending to support the complaint.'" Id. at 256 (quoting
from First National Bank of Arizona v. Cities Service Co., 391 U.S.
253, 290 (1968)). We review the district court's grant of summary
judgment de novo. See Serrano-Cruz, 109 F.3d at 25.
A. The Americans With Disabilities Act
 To prove her ADA claim, Tardie must establish: (1) that
she suffered from a "disability" within the meaning of the ADA;
(2) that she was able to perform the essential functions of her
job, either with or without reasonable accommodation; and (3) that
her employer discharged her in whole or in part because of that
disability. See Feliciano v. State of Rhode Island, 160 F.3d 780,
784 (1st Cir. 1998) (citing Katz v. City Metal Co., Inc., 87 F.3d
26, 30 (1st Cir. 1996)). The district court found that it did not
need to reach the second or third elements because Tardie could not
establish that she had or has a disability as defined by the ADA.
 The regulations governing the ADA define "disability" as:
(A) having a physical or mental impairment which substantially
limits one or more of an individual's major life activities;
(B) having a record of such an impairment; or (C) being regarded as
having such an impairment. See 42 U.S.C. 12102(2); 29 C.F.R.
 1630.2(g). The district court rejected Tardie's arguments that
she had a "disability" under subsections (2)(A) and (2)(C). On
appeal, Tardie argues only that she was disabled under subsection
(2)(C), or that appellees regarded her as having a substantially
limiting impairment. An individual who has an impairment that is
not substantially limiting (or has no impairment at all) is
nevertheless "disabled" if she is treated by her employer as having
an impairment that does substantially limit major life activities.
See 29 C.F.R. 1630.2(l); Katz, 87 F.3d at 32.
 Tardie argues that there is ample evidence that appellees
regarded her as suffering from an impairment. Tardie claims that
appellees demonstrated their perception of her as disabled at the
meeting between Horne, Burman, and LaDew. Tardie claims that the
decision to discharge her was based upon appellees' misperception
that she suffered from a heart condition which rendered her unable
to perform her job, either with or without reasonable
accommodation.
 Tardie has clearly demonstrated that appellees regarded
her as having an impairment that prevented her from working more
than forty hours per week; Tardie specifically told them as much. 
The question becomes whether such an impairment is an impairment
that "substantially limits" one of Tardie's "major life
activities". See 42 U.S.C. 12102(2); 29 C.F.R. 1630.2(g). As 
noted by the district court, working is a major life activity, but
the perceived impairment is not one that substantially limits the
activity of working. The relevant regulation defines
"substantially limits," in the context of the activity of working,
as:
 significantly restricted in the ability to
 perform either a class of jobs or a broad
 range of jobs in various classes as compared
 to the average person having comparable
 training, skills and abilities. The inability
 to perform a single, particular job does not
 constitute a substantial limitation in the
 major life activity of working.

29 C.F.R. 1630.2(j)(3). Hence, the fact that appellees may have
regarded Tardie as unable to work more than 40 hours per week, and
thereby unable to perform her particular job, does not mean that
appellees regarded her as being substantially limited in the major
life activity of working. "An impairment that disqualifies a
person from only a narrow range of jobs is not considered a
substantially limiting one." Heilweil v. Mount Sinai Hosp., 32
F.3d 718, 723 (2d Cir. 1994), cert. denied, 523 U.S. 1147 (1995);
see also McKay v. Toyota Mfg., U.S.A., Inc., 110 F.3d 369, 373 (6th
Cir. 1997) (citing Heilweil and finding that the plaintiff's
inability to perform repetitive-motion factory work did not
restrict her ability to perform either a class of jobs or a broad
range of jobs); Wooten v. Farmland Foods, 58 F.3d 382, 386 (8th
Cir. 1995) (citing Heilweil). As the district court noted, there
are vast employment opportunities available which require only 40-
hour work weeks. Without more, we cannot ascribe error to the
district court's finding that appellees regarded Tardie as having
an impairment that did not substantially limit one or more of her
major life activities. Therefore, we affirm the district court's
grant of summary judgment against Tardie's ADA claim for failure to
demonstrate that she suffered from a disability.
B. The Rehabilitation Act
 Section 504(a) of the Rehabilitation Act provides that
"[n]o otherwise qualified individual with a disability . . . shall,
solely by reason of her or his disability . . . be subjected to
discrimination under any program or activity receiving Federal
financial assistance." 29 U.S.C. 794(a). In any claim under the
Rehabilitation Act, the plaintiff must first establish that she has
a disability covered by the Act. See Leary v. Dalton, 58 F.3d 748, 
752 (1st Cir. 1995). As discussed above, Tardie has not raised a
genuine issue with regard to whether she has a "disability" under
the ADA. "Disability" is defined identically under the ADA and the
Rehabilitation Act. Compare 42 U.S.C. 12102(2)(statutory
definition of ADA's "disability") and 29 C.F.R. 1630.2(g)
(regulatory definition of ADA's "disability") with 29 U.S.C.
 705(20) (statutory definition of Rehabilitation Act's "individual
with a disability") and 29 C.F.R. 1614.203(a)(1) (regulatory
definition of Rehabilitation Act's "individual with handicaps").
 While the ADA's definition of "substantially limits"
under 29 C.F.R. 1630.2(j)(3) does not appear to have a
counterpart in the Rehabilitation Act or its regulations, Congress
has provided that the standards used to determine whether 504 of
the Rehabilitation Act has been violated in a complaint alleging
employment discrimination shall be the standards applied to
employment discrimination actions under the ADA, see 29 U.S.C.
 794(d). Additionally, several courts have held, in the
Rehabilitation Act context, that the inability to perform a
particular job does not constitute a substantial limitation in the
major life activity of working. See, e.g., Heilweil, 32 F.3d at
723-24 (collecting cases for the proposition and finding that the
plaintiff's inability to work in one particular place did not
constitute a disability); Gupton v. Virginia, 14 F.3d 203, 205 (4th
Cir.) (finding that a plaintiff did not demonstrate that an
impairment limited her ability to work when she presented only
evidence that it prevented her from performing one particular job),
cert. denied, 513 U.S. 810 (1994); Byrne v. Board of Educ., 979
F.2d 560, 565 (7th Cir. 1992) (stating that it is well-established
that a person's inability to perform a specific job for a specific
employer does not substantially limit that person's ability to
work); Welsh v. City of Tulsa, 977 F.2d 1415, 1417-18 (10th Cir.
1992) (holding that an impairment that an employer perceives as
limiting an individual's ability to perform only one job is not a
handicap under the Rehabilitation Act); Maulding v. Sullivan, 961
F.2d 694, 698 (8th Cir. 1992)(finding no error in the district
court's conclusion that the inability to perform lab work does not
substantially limit employment as a whole), cert. denied, 507 U.S.
910 (1993). Therefore, the district court properly granted summary
judgment against Tardie's Rehabilitation Act claim for the same
reason her ADA claim fails: she has not shown that appellees
regarded her as having an impairment which substantially limits a
major life activity.
C. The Family and Medical Leave Act
 Tardie also claims that her termination while she was on
medical leave violated the FMLA. An eligible employee who takes
leave under the FMLA is entitled to be restored to the same or an
equivalent position upon returning from leave. See 29 U.S.C.
 2614(a)(1); Hodgens v. General Dynamics Corp., 144 F.3d 151, 159
(1st Cir. 1998) (citing 29 U.S.C. 2614(a)(1) and 29 C.F.R.
 825.100(c)). However, the regulations promulgated under the FMLA
state that "[i]f the employee is unable to perform an essential
function of the position because of a physical or mental condition
. . . the employee has no right to restoration to another position
under the FMLA." 29 C.F.R. 825.214(b). The regulation then goes
on to state that the employer in such a situation may have
obligations under the ADA. See id. 
 In analyzing Tardie's FMLA claim under 825.214(b), the
district court found: (1) that the position of Human Resources
Director at RHRI requires the employee to work fifty to seventy
hours per week, and (2) that the ability to work extended hours was
an essential function of the position. Because Tardie cannot work
more than forty hours per week, the district court found that
Tardie could not perform an essential function of the position, and
therefore had no right to reinstatement. Tardie raises several
arguments challenging this finding.
 First, Tardie claims that the evidence does not support
a finding that an essential function of her job was working more
than 40 hours per week. She points to the job description of the
Director of Human Resources position -- which she wrote -- and
notes that it does not set forth the ability to work sixty- to
seventy-hour weeks as an essential function of the position. 
However, that job description does state that the person holding
the position must have "sufficient endurance to perform tasks over
long periods of time." Also, Tardie herself testified in her
deposition that: (1) dealing with employee issues beyond the hours
of 9:00 a.m. to 5:00 p.m. was "part of the job"; (2) she frequently
needed to be present at the hospital for at least a portion of all
three of the hospital's eight-hour work shifts; (3) the position
often required her to return to work after she had gone home for
the evening; and (4) she worked "anywhere from 50 to 70 [hours per
week] depending on what [she] was doing." The only evidence Tardie
offers to support a finding that working extended hours was not an
essential function of the position was a payroll check stub that
stated that Tardie's salary was based upon a 40-hour week. 
However, even overlooking the fact that this payroll documentation
was created by an outside accounting organization, this evidence
does not support Tardie's position. Tardie was a salaried employee
who was not required to keep track of the hours she worked. The
fact that she was attributed a 40-hour work week for payroll
purposes hardly demonstrates that only 40-hour work weeks were
required of her in the actual performance of her position.
 At oral argument, Tardie's counsel argued that the time
spent at a job is not a "function" of the job; it is a capability. 
Tardie claims that only specific duties can be "functions" of a
position. Tardie attempts to distinguish her position's extended-
hours requirement from the essential functions involved in
Feliciano, 160 F.3d at 785 (lifting patients), and Laurin v.
Providence Hospital and Massachusetts Nurses Assoc., 150 F.3d 52,
57 (1st Cir. 1998) (working the night shift). Tardie describes
lifting patients and working the night shift as "specific duties"
and describes the hours worked as a "capability." Tardie cites no
authority for this distinction, and we believe it to be mere
semantics. It strains credulity to argue that the time of day that
the hours are required to be worked can constitute an essential
function but that the number of hours required to be worked cannot. 
At bottom, Tardie offers no evidence that she or anyone else could
perform the job in only forty hours per week and offers no evidence
to rebut appellees' evidence that the extended-hours requirement is
an essential function of the position. Consequently, the district
court did not err in finding that working more than 40 hours per
week was an essential function of the position.
 Lastly, Tardie argues that, even if she were unable to
perform the essential functions of her job, appellees were still
required to offer her the same or equivalent position with
reasonable accommodations. Tardie claims that she has at least
raised a genuine issue with regard to whether her request to work
only a 40-hour week was a reasonable accommodation. We disagree. 
First of all, it is not at all clear that the concept of
"reasonable accommodation" is applicable in the FMLA context. 
Section 825.214(b) eliminates the obligation to reinstate an
employee returning from FMLA leave if that employee is "unable to
perform an essential function of the position." 29 C.F.R.
825.214(b). Unlike the ADA, this FMLA regulation omits the
qualifying "with or without reasonable accommodation" language. 
The regulation goes on to state that the employer may have
obligations under the ADA, but this reminder does not import the
"reasonable accommodation" qualifier into the FMLA context.
 Additionally, even if the "reasonable accommodation"
language did apply to this exception to the FMLA reinstatement
requirement, the accommodation sought by Tardie was unreasonable as
a matter of law. Working more than forty hours per week is an
essential function of her position. Tardie's request to work only
forty hours per week was a request to eliminate this essential
function. We have previously held that an employer need not
accommodate a disability by foregoing an essential function of the
job. See Feliciano, 160 F.3d at 785; Laurin, 150 F.3d at 56.
 In short, the district court did not err in finding:
(1) that working more than forty hours per week was an essential
function of her position, and (2) that Tardie was unable to perform
that essential function. Therefore, 29 C.F.R. 825.214(b)
relieved appellees of the obligation to reinstate Tardie following
her FMLA leave, and the district court properly denied Tardie's
FMLA claim on this basis.
D. Tardie's State Law Causes of Action
 Tardie assigns no separate or additional error to the
district court in its assessment of her state law claims under
RICRIHA, FEPA, and PFMLA. The district court found that those
state law claims required the same analysis as that utilized for
the corresponding federal statutes already discussed. Tardie does
not challenge this determination; rather, she agrees with it. From
this, Tardie argues that the genuine issues of material fact that
she claims to have identified with regard to her federal claims
also serve to foreclose summary judgment on her state law claims. 
Because we find that no genuine issue exists with regard to
Tardie's ADA, Rehabilitation Act, and FMLA claims, we also find
that no genuine issue exists with regard to Tardie's state law
claims. See Hodgens, 144 F.3d at 158 n.1; Cook v. Rhode Island
Department of Mental Health, Retardation and Hosps., 10 F.3d 17, 21
n.2 (1st Cir. 1993). Therefore, the district court did not err in
granting summary judgment against those causes of action.
 CONCLUSION
 Based on the foregoing, the district court's entry of
summary judgment against Tardie's claims is AFFIRMED.