Ana SANCHEZ SEPULVEDA, Plaintiff,

v.

**MOTOROLA ELECTRONICA DE PUERTO RICO, INC. a/k/a Motorola Portatiles, Inc. Defendant.**

**Civil No. 97–1741(JP).**

United States District Court,
D. Puerto Rico.

Dec. 4, 1997.

Alberto Acevedo Colón, Santurce, PR, for Plaintiff.

Francisco Chévere, McConnell Valdés, San Juan, PR, for Defendant.

### OPINION & ORDER

PIERAS, District Judge.

The Court has before it Defendant's Motion Requesting Summary Judgment (**docket No. 21**) and Plaintiff's Reply (opposition) to Defendant's Request for Summary Judgment. Plaintiff brings this action under the Age Discrimination in Employment Act ("ADEA"), alleging that Defendant discriminated against her based on her age.

Plaintiff Ana Sanchez Sepulveda ("Sanchez"), aged fifty-four, began working for Defendant Motorola Electronica de Puerto Rico ("Motorola") as a Production Operator on March 1, 1972. She was promoted to the position of Auditor Line Inspector on January 13, 1985. She was promoted again on July 7, 1987 to Quality Control Assurance. From 1993 until the termination of her employment relationship with Defendant, Plaintiff was under the immediate supervision of Jose Ivan Aviles ("Aviles"). On November 3, 1994, Sanchez received a written warning, reprimanding her for an alleged incident that took place between her and another employee, Blanca Figueroa, at a company Halloween party. On July 3, 1995, Plaintiff was again reprimanded, this time based on another alleged confrontational incident between her and co-worker, Constantino Rivera. She was suspended for three days. On April 12, 1996, Sanchez was reprimanded for a third time and again suspended, this time for allegedly accusing some of her co-workers for "tattling" on her for reading a newspaper during

business hours.[1] The last suspension was indefinite and with pay (Defendant asserts that she was suspended pending an investigation of the incident and a review of her disciplinary records, but has not supported that contention with competent evidence). On April 23, 1996, after ten days of suspension, Sanchez was called to return to work and was told by Manual[2] and Jose Aviles that she would thereafter report to a new supervisor, that she had been demoted to inspector, and that her salary would be frozen. She was presented with a written memorandum. Although it is unclear from the evidence the exact nature of that memo, Defendant asserts that the memorandum was simply a written explanation of the demotion. From the context of Sanchez's deposition, that explanation makes sense and Plaintiff has not stated otherwise. Sanchez refused to sign the memorandum; instead, she went home and never returned to work.

Plaintiff asserts that she was impermissibly discharged because of her age. She argues that her demotion, combined with a campaign of harassment carried out by Jose Aviles, constituted a constructive discharge. In support of her allegations, Sanchez points to Motorola's disciplinary actions against her. She denies that the various incidents on which Motorola's reprimands were based ever occurred, implying that each was conjured up by Motorola. In addition to the disciplinary actions taken by Motorola, Plaintiff tells of certain comments directed by Jose Aviles toward her, which she asserts evidence his and Motorola's discriminatory animus. She describes Aviles' comments about her bank account, "your account tipped the bank over," and about her paycheck, "the only person I would exchange my paycheck with is you." On other occasions, Aviles told Sanchez she could "already go to [her] house and rest," and that she "should leave somebody else working for her." She also says that he told her, "you are old."

Defendant now moves the Court to enter summary judgment, asserting that the evidence, even when viewed in the light most favorable to Plaintiff, fails as a matter of law to support a claim for age discrimination.

## I. SUMMARY JUDGMENT

Rule 56(c) of the Federal Rules of Civil Procedure provides:

> "[Summary judgment] shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

The purpose of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for a trial." *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir.1990). To make this determination, the Court must cull the record for genuine disputes of material fact, drawing all reasonable inferences in favor of the party against whom summary judgment is sought. *See Kennedy v. Josephthal & Co.*, 814 F.2d 798, 804 (1st Cir.1987). "Material means that a contested fact has the potential to change the outcome of the suit under the governing law if the dispute over it is resolved favorable to the nonmovant." *McCarthy v. Northwest Airlines, Inc.*, 56 F.3d 313, 315 (1st Cir.1995). "A dispute is genuine if the parties' positions on the issue are supported by conflicting evidence." *Int'l Ass'n of Machinists and Aerospace Workers v. Winship Green Nursing Ctr.*, 103 F.3d 196, 200 (1st Cir.1996). If there are material factual disputes, summary judgment is inappropriate.

When faced with a motion for summary judgment, the Court may consider "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any." Fed.R.Civ.P. 56(c). "In addition, a court may take into account any material that would be admissible or usable at trial ... [but] inadmissible evidence

---

1. This incident comprises two issues—whether Sanchez was reading the paper during business hours and whether she confronted her co-workers about telling her supervisor that she was reading the paper.

2. Manual Aviles was apparently another of Sanchez's supervisors.

may not be considered." *Horta v. Sullivan,* 4 F.3d 2, 8 (1st Cir.1993). Moreover, "mere allegations, or conjecture unsupported in the record, are insufficient to raise a genuine issue of material fact." *Id.* (citing *August v. Offices Unlimited, Inc.,* 981 F.2d 576, 580 (1st Cir.1992)); *accord Medina–Munoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir.1990) (a court need not credit "conclusory allegations, improbable inferences, and unsupported speculation"); *Int'l Ass'n of Machinists and Aerospace Workers,* 103 F.3d at 200.

## II. ANALYSIS

### A. McDonnell Douglas

Plaintiff has provided no direct evidence of age discrimination, so the Court must analyze Defendant's motion under the *McDonnell Douglas* burden-shifting paradigm.[3] *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–804, 93 S.Ct. 1817, 1824–1825, 36 L.Ed.2d 668 (1973); *Ruiz v. Posadas de San Juan Assoc.,* 124 F.3d 243, 247 (1st Cir. 1997). Under *McDonnell Douglas,* the plaintiff bears the initial burden of producing evidence from which a reasonable jury could determine that she "(1) was at least 40 years, (2) met the employer's legitimate job performance expectations, (3) experienced adverse employment action, *and* (4) was replaced by a person with roughly equivalent job qualifications." *Hidalgo v. Overseas Condado Ins. Agencies, Inc.,* 120 F.3d 328, 332 (1st Cir.1997). If the plaintiff successfully adduces evidence from which a jury could find each of the four elements of this *prima facie* case, a presumption is created that the employer engaged in impermissible age discrimination. *Id.,* at 334. At that point, the burden of production shifts to the defendant, who must provide evidence from which a rational factfinder could conclude that the employer had a legitimate, nondiscriminatory reason for engaging in the challenged conduct. *Id.* (quoting *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981)). The defendant's burden at the second stage is only one of production; the burden of persuasion never leaves the plaintiff. *Id.* If the defendant successfully produces sufficient evidence to meet its burden, "the presumption raised by the *prima facie* case is rebutted and drops from the case." *Id.* at 335 (quoting *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 507, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993)) (internal quotations omitted). The burden once again returns to the plaintiffs to show that "the proffered reason for the adverse employment action was simply a pretext for age discrimination, [citations omitted], which in turn requires that the employee proffer enough competent evidence to support two findings: (1) the employer's proffered reason was pretextual; and (2) its true motive was age discrimination." *Ruiz,* 124 F.3d at 248.

### B. Plaintiffs' Prima Facie Case

 Motorola points to a lack of evidence that would support a finding that Sanchez experienced an adverse employment decision because Sanchez was not constructively discharged. Defendant's argument partially misconstrues Sanchez's Complaint by reading it too narrowly.[4] Sanchez's Complaint does not expressly assert that she was constructively discharged,[5] but it implies

---

**3.** The First Circuit has not fully explained what constitutes "direct evidence" of discrimination for the purposes of deciding whether the *McDonnell Douglas* framework applies. *Alegre v. Schering Plough Del Caribe Inc.,* 975 F.Supp. 153, 158–59 (D.Puerto Rico 1997); *see also Smith v. F.W. Morse & Co., Inc.,* 76 F.3d 413, 430–32 (1st Cir.1996) (Bownes, S.J., concurring). But whatever it is, Sanchez has certainly not provided it. *Alegre,* 975 F.Supp. at 159. Indeed, Plaintiff has proceeded under the correct assumption that *McDonnell Douglas* governs her action.

**4.** Neither party directly addresses this issue, but it *is* clearly central to resolving Defendant's as-

sertion that Plaintiff cannot meet her initial burden under *McDonnell Douglas* because she was not constructively discharged.

**5.** Constructive discharge is a special, implied form of adverse employment action—where an employer does not actually fire an employee but instead creates an intolerable working environment, the factfinder must infer an adverse employment action, namely termination. While the *McDonnell Douglas prima facie* case should generally be leniently construed, *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093; *Villanueva v. Wellesley College,* 930 F.2d 124, 127 (1st Cir.1991), courts are more rigorous when the claim involves con-

such a claim and depends in part on a showing that she was constructively discharged. The United States Court of Appeals for the First Circuit has held that where an employee suing for employment discrimination was faced with no reduction in salary but nevertheless resigned, a claim of economic damages depends on a showing of constructive discharge. *Serrano–Cruz v. DFI Puerto Rico, Inc.*, 109 F.3d 23, 28 (1st Cir.1997). Logic supports that result because the employee would not have incurred economic damages had she not resigned, so no other adverse employment action could support the economic damages. Sanchez's Complaint seeks lost earnings and benefits. As she was not faced with a reduction in salary or benefits and as she effectively resigned, that part of her Complaint relies on a finding of constructive discharge.

But Sanchez has also asked for non-economic damages—Sanchez seeks One Million dollars ($1,000,000.00) for mental distress and One Hundred Thousand dollars ($100,-000.00) for loss of enjoyment of life.[6] An employee faced with no reduction in salary can nonetheless suffer non-economic damages of the nature (if not magnitude) of those claimed by Sanchez when subjected to adverse employment action. Although the federal employment discrimination statutes envision plaintiffs suing while still working, *Serrano–Cruz*, 109 F.3d at 27 (we have long expected that those who seek to initiate

ADEA claims will do so while still employed, and the instant case reminds us of the wisdom of this expectation); *Cazzola v. Codman & Shurtleff, Inc.*, 751 F.2d 53, 55 (1st Cir. 1984) ("even the victim of unlawful discrimination is expected to seek legal redress while still employed unless actually fired, or constructively discharged due to a drastic reduction in the quality of working conditions), an employee is not *required* to continue to work under unfavorable conditions, even where a reasonable person would not feel *compelled* to resign. And where an employee in such a situation does resign, her employer should not be isolated from liability for emotional pain and suffering caused by discriminatory conduct. To hold otherwise would create a windfall for employers engaged in wrongdoing. Therefore, Sanchez's Complaint, to the extent it seeks compensation for non-economic damages, does not rely on a showing of constructive discharge. While the Court would be required to go through the constructive discharge analysis to ascertain whether summary judgment is warranted for the economic damages aspect of Sanchez's Complaint, she has clearly made out a *prima facie* case for the remaining portion of her Complaint. Because Plaintiff's claim, in its entirety, fails at the third step of the *McDonnell Douglas* praxis, *see infra*, section D. Pretext, the Court will proceed under the assumption that Sanchez has carried her initial burden.[7]

structive discharge. In order to prevail under a theory of constructive discharge, an employee must demonstrate, using an objective standard, that her "working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Serrano–Cruz v. DFI Puerto Rico, Inc.*, 109 F.3d at 26 (quoting *Calhoun v. Acme Cleveland Corp.*, 798 F.2d 559, 561 (1st Cir.1986)). Under that standard, an employee cannot be "unreasonably sensitive to a change in job responsibilities," *id.*, especially where the employee's salary remains unchanged. *Id.* (collecting cases in which demotions or transfers without salary cuts did not constitute constructive dismissal). "A limited blow to one's pride or prestige does not provide reason enough to resign during whatever period may be required to seek judicial relief." *Alicea Rosado v. Garcia Santiago*, 562 F.2d 114, 119–120 (1st Cir.1977). What is required is "a drastic reduction in the quality of working conditions," as measured objectively. *Id.* Such a reduction in quality may

occur where a person is demoted to a position for which he or she is clearly overqualified and is thereby humiliated or where the person is clearly underqualified and transferred to a position where he or she has been set up to fail. *Serrano–Cruz*, 109 F.3d at 26.

**6.** She also seeks reinstatement.

**7.** The Court understands that this is somewhat deceiving, because, under most circumstances, a constructive discharge analysis telescopes with discriminatory intent (the Court can hardly imagine a case in which a finding of constructive discharge would not incorporate a finding of discriminatory animus). But here, the assumption of constructive discharge has been made only for the sake of simplicity, and the Court does not actually hold that Sanchez has provided evidence sufficient to support a finding of constructive dismissal.

### C. Motorola's Non-discriminatory Reason

Motorola asserts that it took disciplinary action against Sanchez due to her inability to get along with her co-workers. According to Defendant, Sanchez was suspended and demoted after she was accused of confronting co-workers who she believed had "tattled" on her for reading a newspaper during working hours. According to Defendant, that incident was the third during an eighteen month period in which Sanchez had a conflict with a co-worker. That is a legitimate non-discriminatory basis for suspending an employee with pay and subsequently demoting that employee.

In reaching that conclusion, the Court does "not assume the role of super personnel department, assessing the merits—or even the rationality—of employers' nondiscriminatory business decisions." *Ruiz*, 124 F.3d at 250. Plaintiff expends great effort evaluating the fairness of Defendant's decision to demote her. The fruits of that effort, while relevant to Plaintiff's final burden of proving pretext, cannot be considered in evaluating Defendant's proffered legitimate, non-discriminatory basis for demoting Sanchez. That is so because the Defendant "need not persuade the court that it was actually motivated by the proffered reason." *Burdine*, 450 U.S. at 254, 101 S.Ct. at 1094.

The Court notes that although the Defendant's 'burden' is minimal and can be satisfied by perusal of the record, *see Bina v. Providence College*, 39 F.3d 21, 25 (1st Cir. 1994), Defendant would be wise in the future to provide sworn statements or other competent evidence in support of its burden of 'production.' In this case, Motorola's articulated reason for demoting Sanchez finds support in her deposition, but the Court does not wish to make a habit of doing Defendant's work for it. A simple sworn statement from the person who made the decision to demote Sanchez would have sufficed, but the Court requires some evidence, other than the attorneys' arguments, to support Defendant's argument. *Bina*, 39 F.3d at 25 (a defendant's reasons for an employment decision are to be established through the introduction of admissible evidence, not through nontestimonial statements by defendant's counsel) (citing *St. Mary's Honor Center*, 509 U.S. at 521, 113 S.Ct. at 2755).

### D. Pretext

The burden has returned to Plaintiff to prove that Defendant's proffered reason for demoting her was actually a pretext for age discrimination. Plaintiff fails to meet this burden. There is simply no evidence before the Court from which a jury could affirmatively link Sanchez's demotion (or other disciplinary reprimands) to her age.

At summary judgment, "once the employer has advanced a legitimate, nondiscriminatory basis for its adverse employment decision, the plaintiff, before becoming entitled to bring the case before the trier of fact, must show evidence sufficient for the factfinder reasonably to conclude that the employer's decision to discharge him was wrongfully based on age." *Hidalgo*, 120 F.3d at 335. "A reason cannot be proved to be a pretext for discrimination unless it is shown both that the reason was false, and that discrimination was the real reason." *St. Mary's Honor*, 509 U.S. at 515, 113 S.Ct. at 2751. Sanchez's evidence in support of her assertion of pretext consists of statements ascribed to Jose Aviles and evidence that the disciplinary actions to which she was subjected were unfairly meted. This evidence, either reviewed in isolation or taken as a whole, fails to carry Plaintiff's burden.

Looking first at the disciplinary measures taken against Sanchez, there is evidence that would support a finding that Defendant's proffered, non-discriminatory basis for demoting Plaintiff was false—the sworn statement of Sonia Santos and Plaintiff's deposition testimony. In her sworn statement, Santos asserts that Sanchez was always respectful and courteous toward her fellow workers. She states that she never saw Sanchez read a newspaper during work hours. And she swears that Sanchez was not in the wrong during the confrontation between Sanchez and Blanca Figueroa in November 1994 which lead to Sanchez being admonished. Sanchez herself testifies that she was not reading a paper the day she was

accused of doing so. She testifies further that the incident with Constantino Rivera that allegedly took place in 1995 and was the basis for a suspension and reprimand did not involve the use of "foul language," as Motorola had been led to believe. She also asserts that she never used foul language and never had any problems with co-workers other than Blanca Figueroa and Constantino Rivera. Drawing all inferences from this evidence in favor of Sanchez, a jury could possibly conclude that Motorola's proffered basis for demoting her was false. But Sanchez must not only establish the falsity of Defendant's reason, she must also establish that discriminatory animus was the motivating force behind Motorola's actions. *See Smith v. Stratus Computer, Inc.*, 40 F.3d 11, 16–18 (1st Cir. 1994). None of the evidence supports an inference that Motorola's true motive was age discrimination. In other words, even if a jury drew the tenuous but legitimate inference created by Santos' and Sanchez testimony that Motorola's proffered basis for demotion was incorrect, they still could not draw from the evidence any inference that Motorola's actions were based on Sanchez's age. In order to meet that burden, Sanchez must provide evidence showing that age was a factor—i.e., that Motorola would not have subjected Sanchez to disciplinary actions but for Sanchez's age. *Ayala–Gerena v. Bristol Myers–Squibb Co.*, 95 F.3d 86, 95–96 (1st Cir.1996). The disciplinary actions themselves do not constitute the necessary evidence, because they make no reference to, and cannot otherwise be linked to, Sanchez's age. We turn to Sanchez's other evidence, Jose Aviles various comments.

■ Although comments can, by themselves, suffice to demonstrate a genuine issue of material fact as to whether an employer's proffered basis for adverse employment action is really a pretext, *Mulero–Rodriguez v. Ponte, Inc.*, 98 F.3d 670, 676 (1st Cir.1996), Aviles' statements to Sanchez do not manifest the requisite nexus between Motorola's decisions and a discriminatory animus. Two of the five statements—"you tipped the bank over" and "you are the only person with whom I would exchange my check"—are unrelated in any possible manner to age. As Plaintiff stated in her deposition, the comments stemmed from Aviles' belief that Plaintiff was making good money at her job.

■ Aviles' statement, "you are old," while obviously directed at Sanchez's age, does not expose any discriminatory animus. At most, such a statement means that Aviles was aware of Sanchez's age (or believed he was) and that he considered Sanchez to be old. The fact that Aviles considered Sanchez old does not automatically create an inference that he believed her age was a hindrance to her performance or a negative in any other way. *E.g., Lehman v. Prudential Ins. Co. of America*, 74 F.3d 323, 329 (1st Cir.1996) (statement regarding age that does not imply that older employees were lacking in competence provides insufficient basis for an inference of age discrimination). Moreover, the law is clear that statements which are "unrelated to the decisional process itself," even if made by decision-makers, do not constitute direct evidence of discrimination. *Price Waterhouse v. Hopkins*, 490 U.S. 228, 277, 109 S.Ct. 1775, 1804, 104 L.Ed.2d 268 (O'Connor concurring). While the distinctive frameworks prescribed by *McDonnell Douglas* and *Price Waterhouse* (setting up procedural framework for Title VII cases in which the plaintiff produces direct evidence of discrimination) necessarily mean that something less than direct evidence of discrimination can be used to show pretext, *see Smith v. F.W. Morse & Co., Inc.*, 76 F.3d 413, 431–432 (1st Cir.1996) (Bownes, S.J., concurring), the First Circuit has defined direct evidence as evidence which, "in and of itself, shows a discriminatory animus." *Id.,* 76 F.3d at 431 (citing *Jackson v. Harvard Univ.*, 900 F.2d 464, 467 (1st Cir.1990)). Although Judge Bownes correctly points out the circularity of this definition, it is the one which the circuit court has given us. Using this meaning, a statement made outside of the context of the decision-making process is not direct evidence of, and therefore fails to show, a discriminatory animus; it is therefore insufficient to carry Sanchez's burden.

■ The final two statements—"you should go home and rest already" and "you should let other persons take over your job"—likewise cannot support a finding of

discriminatory animus toward age. In fact, from Sanchez's testimony, those comments were made in the context of allowing other employees to work overtime, because Sanchez worked the most overtime hours of all of the employees, an issue completely unrelated to age. At most, these statements, like Aviles comment, "you are old," simply demonstrate Aviles' belief that Sanchez was old. Based on the analysis above, the Court reiterates that is not evidence of discriminatory animus. While Aviles' comments demonstrate a lack of tact, "there is nothing about them which suggest to an objectively reasonable observer that they constituted expressions of discrimination based on [age]." *Pagano v. Frank*, 983 F.2d 343, 349 (1st Cir. 1993). "Sporadic instances of rude behavior, without more, do not comprise competent proof of . . . discrimination." *Id.* The Court holds that it would be unreasonable to draw any inference of discriminatory animus from the comments attributed to Aviles.

Aside from Motorola's disciplinary actions directed at Sanchez and Aviles' comments, Plaintiff has pointed to no other evidence to demonstrate that Motorola's proffered legitimate nondiscriminatory basis for demoting Sanchez is a pretext for age discrimination. The Court therefore holds that Sanchez has failed to meet her burden, and summary judgment is appropriate.

IT IS SO ORDERED.