**Madeline AGUAYO, et al., Plaintiffs,**

v.

**Janet NAPOLITANO, et al., Defendants.**

**Civil Nos. 09–2113 (DRD), 09–1885(DRD).**

United States District Court, D. Puerto Rico.

Sept. 12, 2011.

---

Alvaro R. Calderon–Jr., Monica A. Sanchez–Rivera, Alvaro R. Calderon, Jr. LLP, Tayra A. Hernandez–Celpa, Schuster & Aguilo LLP, San Juan, PR, for Plaintiffs.

Isabel Munoz–Acosta, Lisa E. Bhatia–Gautier, United States Attorneys Office, District of Puerto Rico, San Juan, PR, for Defendants.

### OPINION AND ORDER

DANIEL R. DOMÍNGUEZ, District Judge.

On October 29, 2009, Plaintiffs filed this Title VII suit against the Federal Emergency Management Agency ("FEMA") for alleged national origin discrimination and retaliation (Docket No. 1). Plaintiffs are comprised of approximately three hundred former employees of FEMA's National Processing Service Center ("NPSC")[1] in Trujillo Alto, Puerto Rico ("NPSC–PR"), who are all of Puerto Rican descent. Plaintiffs encompass Supervisors, Program Specialists, Agent Coordination Team ("ACT") members, and other Puerto Rican employees (collectively "Plaintiffs"). Generally, Plaintiffs claim that FEMA discriminated and retaliated against these employees by creating a scheme to close the NPSC–PR.

### I. FACTUAL & PROCEDURAL BACKGROUND

Throughout 2006, the Supervisors, Program Specialists, and ACT members at the NPSC–PR allege that they were receiving lower pay than non-Puerto Rican employees working at NPSCs located throughout the continental United States. Specifically, the Program Specialists at the NPSC–PR claim that they were paid at a grade level 9, while the Program Specialists working at the other NPSCs in the United States were paid at grade level 11.[2] Plaintiffs claim that after the Puerto Rico Program Specialists formally complained of this pay disparity, Defendants cancelled 4 year CORE job positions[3] in Puerto Rico for the Program Specialists in an act of retaliation.

Plaintiffs advance that "[b]ecause of discriminatory reasons, and in retaliation for an ever increasing number of discrimination complaints coming from Puerto Rico NPSC, Defendants began plotting to close the Puerto Rico NPSC. In May of 2008, FEMA 'temporarily' closed the Puerto Rico NPSC under the guise of safety." (Docket No. 62, ¶ 5.10).

On October 8, 2008, Defendants stated that all of the safety concerns had been addressed and that the NPSC–PR was to be re-opened on a limited basis. However, on December 30, 2008, Plaintiffs were informed that FEMA had decided to permanently close the facility.

As the NPSC–PR facility was closing, FEMA gave some Plaintiffs the option to temporarily or permanently relocate to NPSCs in the U.S. mainland. Plaintiffs claim that they were "forced to make a decision" as to whether or not accept these positions "without having the certainty on whether their jobs would be available in Puerto Rico in the long run." Plaintiffs also allege that if they did not accept the relocation, they would be terminated.

Plaintiffs aver that FEMA has recruited non-NPSC-PR employees for positions in

---

1. NPSCs provides, via telephone, centralized disaster application services to disaster victims.

2. Most federal civil service jobs are set on the General Schedule, or GS pay scale, which calculates required experience and level of job responsibility against a system of grades and steps within each grade. The GS pay scale contains 15 grades, GS–1 being the lowest and GS–15 being the highest. Each grade has 10 steps and each step is a pay increase within that grade. Salaries also vary by geographic location in accordance with the cost of living in that area. See http://www.makingthedifference.org/federalbenefits/federalpay.shtml, August 23, 2011.

3. Plaintiffs do not specify what is a "CORE job position."

other NPSCs in the U.S. mainland and favored less qualified applicants than the NPSC–PR employees that applied. Plaintiffs further allege that the NPSC–PR employees were denied these positions because FEMA claimed that there were no vacancies available.

Plaintiffs working at NPSCs in the United States claim that they were subjected to racial slurs, hate notes, threats and general hostility. One Plaintiff asserts the extreme hostility of finding urine inside his coffee cup. Plaintiffs further assert that they were not permitted to speak Spanish at the U.S. NPSCs, including when the employees were on their breaks. Plaintiffs additionally advance that they were not allowed to travel back to Puerto Rico without losing their jobs or being placed on non-pay status.

FEMA placed Plaintiffs that did not transfer to the United States mainland on a non-work/non-pay status on a rotating basis. This policy practically meant that only about 20 of the 200 NPSC–PR employees would work for two weeks at time, leaving months in between these two week work opportunities without work or pay. Plaintiffs content that this rotational work policy is akin to a constructive discharge.

Plaintiffs further aver that FEMA did not allow them to remain in the NPSC–PR to field bilingual calls, which they had previously been authorized to attend. Plaintiffs also claim that FEMA changed its policy to require that documents submitted in the Spanish language be translated into English before being processed, notwithstanding Plaintiffs' bilingual abilities. Plaintiffs assert that this policy resulted in Puerto Rican disaster victims being treated disparately, that is depriving fellow Puerto Ricans of the relief to which they were legally entitled.[4] Plaintiffs also assert that these policies did not allow them to perform their work to their optimum capacity thus, eventually, giving FEMA an excuse to close the NPSC–PR.

On December 17, 2010, Defendants moved to dismiss Plaintiffs' *Amended Complaint* (Docket No. 49). Therein, Defendants argue that Plaintiffs' cannot survive the *Twombly/Iqbal* plausibility pleading standard. Defendants further argue that Plaintiffs do not meet the requisite elements for their disparate treatment and disparate impact claims and that Plaintiffs lack a causal nexus between Defendants' policy and the alleged retaliatory closure of the NPSC–PR.

On January 5, 2011, Plaintiffs opposed this motion (Docket No. 53). Plaintiffs assert that they meet *Twombly/Iqbal's* plausibility standard and that they are not required to satisfy the prima facie standard at the motion to dismiss stage. Plaintiffs also argue that temporal proximity, by itself, is not dispositive of their claims.

On February 14, 2011, Defendants allege in their reply that Plaintiffs have pled themselves out of court by establishing the elements of a valid defense to their claims (Docket No. 65). Specifically, Defendants argue that too much time has elapsed between Plaintiffs' administrative complaints of discrimination and the closing of the NPSC–PR to demonstrate causation for Plaintiffs' retaliation claim.

In Plaintiffs' *Sur-reply* (Docket No. 69), filed on the following day, February 15, 2011, Plaintiffs assert that there is a temporal proximity between filing their Equal Employment Opportunity ("EEO") claims from 2006 through December of 2008, and the closing of the NPSC–PR in January of 2009. Furthermore, Plaintiffs argue that

---

**4.** The Court understands that Plaintiffs are barred from alleging *jus tertii* non-work related causes of action that are possessed by said third parties.

they complied with temporal proximity standards given that only months had elapsed between the last EEO filing and the closing of the NPSC–PR. Plaintiffs aver that, over two years, collectively, they filed a substantial number of EEO complaints against FEMA.

## II. MOTION TO DISMISS STANDARD

Federal Rule of Civil Procedure 8(a) requires plaintiffs to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R.Civ.P. 8(a)(2). Under *Bell Atlantic v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), a plaintiff must "provide the grounds of his entitlement [with] more than labels and conclusions." Thus, a plaintiff must now present allegations that "nudge [his] claims across the line from conceivable to plausible" in order to comply with the requirements of Rule 8(a). *Id.* at 570, 127 S.Ct. 1955; *see e.g. Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

When considering a motion to dismiss, the Court's inquiry occurs in a two-step process under the current context-based "plausibility" standard established by *Twombly*, 550 U.S. 544, 127 S.Ct. 1955, and *Iqbal*, 129 S.Ct. 1937. "Context based" means that a Plaintiff must allege facts that comply with the basic elements of the cause of action. *See Iqbal*, 129 S.Ct. at 1949–1950 (concluding that plaintiff's complaint was factually insufficient to substantiate the required elements of a *Bivens* claim, leaving the complaint with only conclusory statements). First, the Court must "accept as true all of the allegations contained in a complaint[,]" discarding legal conclusions, conclusory statements and factually threadbare recitals of the elements of a cause of action. *Maldonado v. Fontanes*, 568 F.3d 263, 268 (1st Cir.2009) (quoting *Iqbal*, 129 S.Ct. 1937) (internal quotation omitted).

Under the second step of the inquiry, the Court must determine whether, based upon all assertions that were not discarded under the first step of the inquiry, the complaint "states a plausible claim for relief." *Id.* This second step is "context-specific" and requires that the Court draw from its own "judicial experience and common sense" to decide whether a plaintiff has stated a claim upon which relief may be granted, or, conversely, whether dismissal under Rule 12(b)(6) is appropriate. *Id.*

Thus, "[i]n order to survive a motion to dismiss, [a] plaintiff must allege sufficient facts to show that he has a plausible entitlement to relief." *Sanchez v. Pereira–Castillo*, 590 F.3d 31, 41 (1st Cir.2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]' 'that the pleader is entitled to relief.' " *Iqbal*, 129 S.Ct. at 1950 (quoting Fed. R.Civ.P. 8(a)(2)). Furthermore, such inferences must be at least as plausible as any "obvious alternative explanation." *Id.* at 1950–51 (citing *Twombly*, 550 U.S. at 567, 127 S.Ct. 1955). "A plaintiff is not entitled to 'proceed perforce' by virtue of allegations that merely parrot the elements of the cause of action." *Ocasio–Hernandez v. Fortuño–Burset*, 640 F.3d 1, 12 (1st Cir.2011), (citing *Iqbal*, 129 S.Ct. at 1950).

The First Circuit has cautioned against equating plausibility with an analysis of the likely success on the merits, affirming that the plausibility standard assumes "pleaded facts to be true and read in a plaintiff's favor" "even if seemingly incredible." *Sepúlveda–Villarini v. Dep't of Educ. of P.R.*, 628 F.3d 25, 30 (1st Cir. 2010) (citing *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955; *Ocasio–Hernandez*, 640 F.3d at 12 (citing *Iqbal*, 129 S.Ct. at 1951); *see*

*Twombly,* 550 U.S. at 556, 127 S.Ct. 1955 ("[A] well-pleaded complaint may proceed even if it appears that a recovery is very remote and unlikely.")(internal quotation marks omitted); *see Ocasio–Hernandez,* 640 F.3d at 12 (citing *Twombly,* 550 U.S. at 556, 127 S.Ct. 1955)("[T]he court may not disregard properly pled factual allegations, 'even if it strikes a savvy judge that actual proof of those facts is improbable.' "). Instead, the First Circuit has emphasized that "[t]he make-or-break standard ... is that the combined allegations, taken as true, must state a plausible, [but] not a merely conceivable, case for relief." *Sepúlveda–Villarini,* 628 F.3d at 29.

However, a complaint that rests on "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like" will likely not survive a motion to dismiss. *Aulson v. Blanchard,* 83 F.3d 1, 3 (1st Cir.1996). Similarly, unadorned factual assertions as to the elements of the cause of action are inadequate as well. *Penalbert–Rosa v. Fortuno–Burset,* 631 F.3d 592 (1st Cir.2011). "Specific information, even if not in the form of admissible evidence, would likely be enough at [the motion to dismiss] stage; pure speculation is not." *Id.* at 596; *see Mendez Internet Mgmt. Servs. v. Banco Santander de P.R.,* 621 F.3d 10, 14 (1st Cir.2010) (The *Twombly* and *Iqbal* standards require District Courts to "screen[ ] out rhetoric masquerading as litigation.").

### III. ANALYSIS

Before reaching the merits of Plaintiffs' claims, the Court must analyze Plaintiffs' *Amended Complaint* under the *Twombly* and *Iqbal* standards set forth above. The Court is required to separate out merely conclusory pleadings and focus on the remaining well-pleaded factual allegations to determine if they plausibly give rise to an entitlement to relief. *Iqbal,* 129 S.Ct. at 1950. Even read in a light most favorable to Plaintiffs, the Plaintiffs' *Amended Complaint* is littered with unsubstantiated legal conclusions couched as factual allegations. Plaintiffs further raise a host of benign facts and attempt to contort them into a discriminatory animus. "A court considering a motion to dismiss may begin by identifying allegations that, because they are mere conclusions, are not entitled to the assumption of truth." *Iqbal,* 129 S.Ct. at 1940.

Stripping away from the *Amended Complaint* Plaintiffs' bald assertions, unsupportable conclusions, and unadorned factual assertions, as we must, the only viable, plausible weapons in Plaintiffs' arsenal is their claim of pay disparity, FEMA's policy of placing non-transferred employees on a non-work/non-pay status on a rotating basis, and facts relating to the closing of the NPSC–PR allegedly on the grounds of safety. *All* other "facts" are merely unsubstantiated rhetoric; *see id.* ("[T]he tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements.").

For instance, as the NPSC–PR was winding down its operations, FEMA offered to transfer Plaintiffs to other NPSCs in the continental United States. Plaintiffs imply that FEMA's job offers are discriminatory because "Plaintiffs were forced to make a decision as to a permanent transfer to another state, without giving them a definite answer on whether the Puerto Rico NPSC was going to close or not." (Docket No. 62, ¶ 5.11). Relying upon the Court's common sense and judicial experience, when an employer offers to transfer an employee to an at least equally desirable location in the midst of a force reduction, the offer to keep the employee as part of an organization is not discriminatory even if it is not known how many, or if all, the job positions will be eliminated at the original facility. The

Court finds that Plaintiffs' inference that being offered a job transfer is indicator of discriminatory intent constitutes an unreasonable and implausible legal conclusion.

■ Plaintiffs also claim that FEMA began to require that calls be conducted in English and that mail or appeals received in the Spanish language be first translated into English before being processed. Plaintiffs conclude that these policies are evidence of FEMA harassing and discriminating against Plaintiffs as Plaintiffs are all bilingual. FEMA is a federal government agency and it is permissible for "the government to regulate the content of what is or is not expressed when it is the speaker or when it enlists private entities to convey its own message." *Rosenberger v. Rector and Visitors of University of Virginia*, 515 U.S. 819, 115 S.Ct. 2510, 2518–19, 132 L.Ed.2d 700 (1995). *See also Capitol Square Review & Advisory Bd. v. Pinette*, 515 U.S. 753, 115 S.Ct. 2440, 2449, 132 L.Ed.2d 650 (1995)(government runs no risk of suppressing free speech when it restrains its own speech). A federal agency requiring that official business be conducted in the English language is not discriminatory, especially when the government supplies adequate translation services. Plaintiffs fail to manipulate these innocuous policies into a plausible claim for relief.

■ Plaintiffs also contend, inter alia, that Plaintiffs working in continental NPSCs endured "racial slurs," "hate notes" and the "cold shoulder" and one Plaintiff even found urine inside his coffee cup. Plaintiffs' *Amended Complaint* lack who allegedly made or wrote these discriminatory comments, who they were made or said to, or in which facility.[5] Plaintiffs have simply not alleged enough context specific details and facts to plausibly support a disparate impact claim based on these vague facts.[6] Furthermore, there is no allegation that these remarks were made by decisionmakers or that they are contemporaneous in time as to the underlying action. *See Gonzalez v. El Dia, Inc.*, 304 F.3d 63, 69 (1st Cir.2002) (" '[S]tray workplace remarks,' as well as statements made either by nondecisionmakers or by decisionmakers not involved in the decisional process, normally are insufficient, standing alone, to establish either pretext or the requisite discriminatory animus."); *see also Lehman v. Prudential Ins. Co. of Am.*, 74 F.3d 323, 329 (1st Cir.1996) ("Isolated, ambiguous remarks are insufficient, by themselves, to prove discriminatory intent."); *Ezold v. Wolf, Block, Schorr & Solis–Cohen*, 983 F.2d 509, 545 (3d Cir. 1992) ("Stray remarks by non-decision-makers or by decisionmakers unrelated to the decision process are rarely given great weight. . . ."). Hence, they do not comply with the *Iqbal* requirement.

With the exception of Plaintiffs' claims of pay discrepancy, FEMA's non-work/non-pay status policy and FEMA's decision to close the facility out of safety concerns, Plaintiffs' *Amended Complaint* is plagued with implausible legal conclusion masquerading as facts. As such, these conclusions fail to plausibly support Plaintiffs' disparate treatment and disparate impact claims.

## A. Disparate Treatment and Disparate Impact

■ Title VII of the 1964 Civil Rights Act prohibits an employer from "discrimi-

---

5. Plaintiffs do allege that the urine in the coffee cup was discovered in a Maryland NPSC.

6. Thus, for those Plaintiffs that cannot claim a discrepancy in pay, the Court finds that Plaintiffs have not plausibly supported their disparate impact claim. *See Iqbal*, 129 S.Ct. at 1940 ("A context specific inquiry requires 'more than an unadorned, the defendant-un-lawfully-harmed-me accusation.' ").

nat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race ... or national origin." *Ricci v. DeStefano*, 557 U.S. 557, 129 S.Ct. 2658, 174 L.Ed.2d 490 (2009); *see Candelario Ramos v. Baxter Healthcare Corp. of Puerto Rico, Inc.*, 360 F.3d 53 (1st Cir. 2003). "An individual may allege that he has been subjected to 'disparate treatment' because of his race, or that he has been the victim of a facially neutral practice having a 'disparate impact' on his racial group." *Furnco Construction Corp. v. William Waters*, 438 U.S. 567, 582, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978).

### i. Disparate Treatment

▮ Under Title VII, a discrimination case can be established in either of two ways: first, through direct evidence of discrimination or, second, through the cumulative effect of indirect evidence of the employer's motivation. *See Lipsett v. Univ. of Puerto Rico*, 864 F.2d 881, 909 (1st Cir.1988); *see also Wilson v. B/E Aerospace Inc.*, 376 F.3d 1079, 1085 (11th Cir.2004)("A plaintiff may establish a claim of illegal disparate treatment through either direct evidence or circumstantial evidence.").

▮ Direct evidence "is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor" in the adverse employment decision at issue. *Price Waterhouse v. Hopkins*, 490 U.S. 228, 247, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989); *Jacklyn v. Schering–Plough Healthcare Prods., Sales Corp.*, 176 F.3d 921, 926 (6th Cir.1999); *Ayala–Gerena v. Bristol Myers–Squibb Co.*, 95 F.3d 86, 96 (1st Cir.1996).

▮ Moreover, in a national origin disparate treatment case, evidence is considered relevant if it has "any tendency" to make more or less probable the fact that Plaintiffs' national origin motivated Defen-

dants to take the challenged action. *See* Fed.R.Evid. 401. If the plaintiff provides direct evidence of discriminatory animus, the burden of persuasion shifts to the defendant to establish by preponderance of the evidence "that it would have [taken the adverse action] even had it not been motivated by discrimination." *Jacklyn*, 176 F.3d at 926.

▮ Absent direct evidence of intentional discrimination, a Title VII plaintiff alleging disparate treatment must then employ the burden-shifting framework enunciated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and further articulated in *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993), and *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). Where, as here, there is no "smoking gun" evidence of discrimination, Plaintiffs only need to provide circumstantial evidence under burden-shifting analysis from *McDonnell Douglas Corp.*, 411 U.S. 792, 93 S.Ct. 1817 (1973).

First, the plaintiff must make out a prima facie case of discrimination. The burden then shifts to the defendant to present a legitimate, non-discriminatory reason, sufficient to raise a genuine issue of material fact as to whether it discriminated against the employee, for the employment decision. Finally, the burden is placed on the plaintiff to demonstrate that the non-discriminatory reason is mere pretext and that the real reason was discrimination.

*Clifford v. Barnhart*, 449 F.3d 276, 280–281 (1st Cir.2006)(*citing McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817 and *St. Mary's Honor Ctr.*, 509 U.S. at 510–11, 113 S.Ct. 2742).

In a disparate treatment case, Plaintiffs commonly may prove a prima facie case by showing that (1) they are members of a protected group; (2) they were meeting their employer's legitimate expectations; (3) they were subjected to an adverse employment action; and that (4) they were treated less favorably than a similarly-situated employee outside of the protected class. *See Hildebrandt v. Illinois Dept. of Natural Resources,* 347 F.3d 1014, 1030–1031 (7th Cir.2003); *Woods v. Bertelsmann Music Group,* 191 F.3d 457 (7th Cir.1999); *Bragg v. Navistar Intern, Transp. Corp.,* 164 F.3d 373, 376 (7th Cir. 1998); *see also McDonnell Douglas Corp.,* 411 U.S. at 802, n. 13, 93 S.Ct. 1817 ("The facts necessarily will vary in Title VII cases, and the specification ... of the prima facie proof required from respondent is not necessarily applicable in every respect to differing factual situations."). The defendant's burden under the McDonnell Douglas framework is only a burden of production; the burden of persuasion remains at all times with the plaintiff. *See Burdine,* 450 U.S. 248, 101 S.Ct. 1089; *St. Mary's Honor Ctr.,* 509 U.S. 502, 113 S.Ct. 2742; *Sanchez Sepulveda v. Motorola Electronica De Puerto Rico, Inc.,* 988 F.Supp. 34, 37 (1997). Should Plaintiffs satisfy the four criteria set forth above, the Defendant must then articulate a valid non-discriminatory reason for the adverse employment action. After a defendant has articulated such a showing, "the presumption raised by the prima facie case is rebutted and drops from the case." *Id.* (*citing Hidalgo v. Overseas Condado Ins. Agencies, Inc.,* 120 F.3d 328, 332 (1st Cir. 1997)). In the final stage, the burden of production returns to the plaintiff who must show that the defendant's stated non-discriminatory reason for the adverse employment action was false, a sham or a pretext for the real motive, discrimination. *Mulero–Rodriguez v. Ponte, Inc.,* 98 F.3d 670, 673 (1st Cir.1996). "To meet this burden, the plaintiff must prove not only that the reason articulated by the employer was a sham, but also that its true reason was plaintiff's race or national origin." *Rodriguez–Cuervos v. Wal–Mart Stores, Inc.,* 181 F.3d 15, 19 (1st Cir.1999)(citing *Shorette v. Rite Aid of Maine, Inc.,* 155 F.3d 8, 13 (1st Cir.1998)).

In the instant matter, Plaintiffs easily meet the first prong of establishing a prima facie claim as Plaintiffs are all native Puerto Ricans.[7] Additionally, Plaintiffs have suffered an adverse employment action when they were terminated from their positions. *See Velez v. Project Renewal,* 2003 WL 402500, *3 (S.D.N.Y.2003) ("As a Puerto Rican, [they are] a member of a protected class, and termination is an adverse employment action."). However, Plaintiffs' allegation of pay disparity for the Supervisors, Program Specialists, and ACT indicates that these Plaintiffs were treated less favorably than counterparts working in the United States. Hence, Plaintiffs have plausibly alleged a disparate treatment claim for the Supervisors, Program Specialists, and ACT.

### ii. Disparate Impact

Disparate treatment claims "may be distinguished from claims that stress disparate impact ... [which involve] employment practices that are facially neu-

---

**7.** Plaintiffs do not put forth any claims that the they were meeting FEMA's legitimate expectations and Defendants do not claim that Plaintiffs were not meeting their legitimate expectations. However, in a force reduction case such as the instant matter, where Plaintiffs comprise a substantial percentage of the closed facility, the Court will infer at the motion to dismiss stage that Plaintiffs are meeting their employer's legitimate expectations where there is no allegation to the contrary. This inference is particularly strong for those employees who were offered positions at NPSCs in the United States.

tral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity." *Int'l Bhd. of Teamsters v. United States,* 431 U.S. 324, 335, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977). "The necessary premise of the disparate impact approach is that some employment practices, adopted without a deliberately discriminatory motive, may in operation be functionally equivalent to intentional discrimination." *Watson v. Ft. Worth Bank and Trust,* 487 U.S. 977, 987, 108 S.Ct. 2777, 101 L.Ed.2d 827 (1988). *See E.E.O.C. v. Steamship Clerks Union,* 48 F.3d 594, 601–602 (1st Cir.1995) (Discrimination "is not always a function of a pernicious motive or malign intent ... [it] may also result from otherwise neutral policies and practices that, when actuated in real-life settings, operate to the distinct disadvantage of certain classes of individuals."). "In the disparate impact milieu, the prima facie case consists of three elements: identification, impact, and causation." *Steamship Clerks Union,* 48 F.3d at 601.

■ Plaintiffs have plausibly established a disparate treatment claim under Title VII. Plaintiffs stated that FEMA had a policy of placing those employees that were not transferred to other NPSCs, approximately 200 individuals, on "non-work/non-work status" on a rotating basis. This policy practically meant that twenty employees would work, and be paid, only for two weeks at a time. With twenty of 200 employees taking turns working in two week intervals, an employee would not be working, and not receiving a paycheck, for more than four months or, more precisely, for eighteen weeks at a time. This policy had the likely impact of forcing many Puerto Rican NPSC–PR employees to seek new employment as it would be nearly impossible to continue to support oneself or ones' family with only working for, at most three, two week work periods per calendar year. While this policy appears

to be facially neutral, and while FEMA may have even had a benevolent motive of attempting to pay as many employees as possible, the Court finds that the policy plausibly had a discriminatory impact. Therefore, the Court **DENIES** FEMA's motion to dismiss Plaintiffs' disparate impact claims.

### B. Retaliation

■ "Title VII's antiretaliation provision forbids an employer from discriminat[ing] against any of his employees for engaging in protected conduct, without specifying the employer acts that are prohibited." *Burlington Northern and Santa Fe Ry. v. White,* 548 U.S. 53, 60–62, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006) (internal citations omitted). To establish a prima facie case for retaliation, a plaintiff must show: (1) they engaged in protected conduct; (2) they experienced an adverse employment action; and (3) that there was a causal connection between the protected conduct and the adverse employment action. *Calero–Cerezo v. United States D.O.J.,* 355 F.3d 6, 25 (1st Cir.2004) (citing *Gu v. Boston Police Dep't,* 312 F.3d 6, 14 (1st Cir.2002)).

■ Plaintiffs allege that in retaliation for the significant number of discriminatory complaints by NPSC–PR employees, FEMA cancelled the four year CORE job positions for the Program Specialists, shut down the entire NPSC–PR facility, and instituted the non-work/non-work status policy for employees that were not transferred to other locales.

■ Plaintiffs have clearly engaged in protected activity by filing their EEO complaints. "It is uncontested that Plaintiff's filing of an EEO complaint ... is a protected activity." *Franceschi v. Department of Veteran Affairs,* 2006 WL 2795603 (D.P.R.2006). Plaintiffs were also subjected to an adverse employment action when

FEMA closed the NPSC–PR. "An adverse employment action is defined as 'an ultimate employment decision, such as discharge or failure to hire, or other conduct that alters the employee's compensation, terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee.'" *Olson v. Lowe's Home Ctrs., Inc.,* 130 Fed.Appx. 380, 393 (11th Cir.2005); (citing *Gupta v. Florida Bd. of Regents,* 212 F.3d 571, 587 (11th Cir.2000)).

 However, to properly substantiate Plaintiffs' retaliation claim, Plaintiffs must plausibly demonstrate that the causality between the protected conduct and the adverse employment action are temporally close. "The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action, as sufficient evidence of causality to establish a *prima facie* case, uniformly hold that the temporal proximity must be 'very close.'" *Clark County Sch. Dist. v. Breeden,* 532 U.S. 268, 274, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001). "It follows that the interval separating the complaints and the allegedly retaliatory conduct must be capable of 'support[ing] an inferred notion of a causal connection between the two.'" *Ahern v. Shinseki,* 629 F.3d 49, 58 (1st Cir.2010)(citing *Bennett v. Saint–Gobain Corp.,* 507 F.3d 23, 32 (1st Cir.2007)).

The Court finds that Plaintiffs have plausibly alleged sufficient temporal proximity between the protected activity and the adverse employment action to substantiate their retaliation claim. Plaintiffs continuously filed EEO claims regarding their pay disparity and other grievances throughout 2007 and 2008 and defendants closed the NPSC–PR in January of 2009. Moreover, a substantial number of Plaintiffs' EEO claims were filed in early December of 2008, the month prior to the closing of the NPSC–PR. Thus, Plaintiffs have sufficiently demonstrated the requisite 'tight fit' for temporal proximity between the protected activity and the adverse employment action to substantiate their retaliation claim. *Ahern,* 629 F.3d at 58. The Court concludes that Plaintiffs have alleged the necessary temporal proximate and that the closure of the NPSC facility is plausibly a retaliatory action for Plaintiffs' numerous EEO claims.

## IV. CONCLUSION

For the reasons stated above, the Court hereby **GRANTS IN PART** and **DENIES IN PART** Defendants' *Motion to Dismiss* (Docket No. 49). The Court **DENIES** Defendants' motion to dismiss Plaintiffs' disparate treatment for the Supervisors, Program Specialists, Agent Coordination Team members as well as Plaintiffs' disparate impact claims and retaliations claims. However, the Court grants Defendants' motion with respect to Plaintiffs' disparate treatment claims for Plaintiffs that cannot claim a pay disparity and **DISMISSES** these Plaintiffs' disparate impact claims **WITH PREJUDICE.**

**IT IS SO ORDERED.**